[No. S154847. July 2, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCE VINHTUONG NGUYEN, Defendant and Appellant.

**COUNSEL**

Mary J. Greenwood, Public Defender, Seth Flagsberg, Deputy Public Defender; The Law Offices of Douglas L. Rappaport, Douglas L. Rappaport and Michelle M. Thomson for Defendant and Appellant.

Seth Flagsberg, Deputy Public Defender (Santa Clara); and Michael Ogul, Chief Deputy Public Defender (Solano), for California Public Defenders Association as Amicus Curiae on behalf of Defendant and Appellant.

Jonathan Laba; Maureen Pacheco; Marsha Levick; Neha Desai; and Jessica Feierman for Pacific Juvenile Defender Center, Juvenile Law Center, Juvenile Division of the Los Angeles Public Defender, Alternate Public Defender, National Center for Youth Law and Youth Law Center as Amici Curiae on behalf of Defendant and Appellant.

Dallas Sacher for Sixth District Appellate Program as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Gerald A. Engler, Assistant Attorney General, Donald E. de Nicola, Deputy State Solicitor General, René A. Chacón, Laurence K. Sullivan, Eric D. Share and Amy Haddix, Deputy Attorneys General, for Plaintiff and Respondent.

Steve Cooley, District Attorney (Los Angeles), Lael Rubin, Phyllis Asayama and Roberta Schwartz, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.

Galit Lipa and Michael S. Romano for Criminal Defense Clinic and Mills Legal Clinic of Stanford Law School as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—California's "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d))[1] increases the maximum sentence for an adult felony offense upon proof that the defendant has suffered one or more qualifying "prior felony convictions"—a term that specifically includes certain prior criminal adjudications sustained by defendant, while a minor, under the juvenile court law. (§§ 667, subd. (d)(3), 1170.12, subd. (b)(3); see Welf. & Inst. Code, § 601 et seq.) Does the United States Constitution allow such use of a prior juvenile adjudication even though there was no right to a jury trial in the juvenile proceeding? Like the majority of recent courts to address the issue, we conclude the answer is yes.

The question arises in the following context: A series of United States Supreme Court decisions, beginning with *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), establishes an adult criminal defendant's general right, under the Fifth, Sixth, and Fourteenth Amendments, to a *jury* finding beyond reasonable doubt of any fact used to increase the sentence for a felony conviction beyond the maximum term permitted by conviction of the charged offense alone. (E.g., *Oregon v. Ice* (2009) 555 U.S. ___, ___ [172 L.Ed.2d 517, 129 S.Ct. 711, 714] (*Ice*); *Cunningham v. California* (2007) 549 U.S. 270, 274–275 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*); *Blakely v. Washington* (2004) 542 U.S. 296, 303–305 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*); *Apprendi, supra,* at p. 490.) *Apprendi* found this principle inherent in the common law tradition, in effect when the Sixth Amendment was adopted, that any fact crucial to the maximum punishment for an offense was, for that purpose, an "element" of the offense, and thus equally subject to the requirements of indictment or presentment, proof beyond reasonable doubt, and jury trial. (*Apprendi, supra,* at pp. 476–485.)

Here, in adult felony proceedings, the complaint charged, for purposes of sentence enhancement, that defendant previously had sustained a juvenile

---

[1] All further unlabeled statutory references are to the Penal Code.

adjudication which qualified as a "prior felony conviction" under the Three Strikes law. By statute, California affords an adult criminal defendant the right to a jury trial on whether he or she "has suffered" an alleged prior conviction. (§§ 1025, subds. (a), (b), 1158.) *Defendant waived that jury-trial right in this case.* Documentary evidence presented to the court indicated that, in a prior juvenile proceeding, defendant, then 16 years old, had admitted committing an aggravated assault, and an adjudication to that effect had been entered accordingly. On this basis, the sentencing court in this case found the prior conviction allegation true. Applying the "second strike" provision of the Three Strikes law, the court doubled defendant's sentence for the current offense.

Nonetheless, defendant claims the *Apprendi* rule barred use of the prior juvenile adjudication to enhance his maximum sentence in the current case because the prior *juvenile proceeding*, though it included most constitutional guarantees attendant upon adult criminal proceedings, did not afford him the right to a jury trial. (*McKeiver v. Pennsylvania* (1971) 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976] (*McKeiver*); *People v. Lara* (1967) 67 Cal.2d 365, 398 [62 Cal.Rptr. 586, 432 P.2d 202]; *In re Daedler* (1924) 194 Cal. 320 [228 P. 467]; see Welf. & Inst. Code, § 702.) He bases this claim on language employed by the United States Supreme Court to justify an *exception* to the *Apprendi* rule—i.e., that "the fact of a prior conviction," used to enhance the maximum sentence for a later offense, *need not* be proved to a jury beyond reasonable doubt, but may simply be found by the sentencing court. (*Apprendi, supra,* 530 U.S. 466, 490; see *Almendarez-Torres v. United States* (1998) 523 U.S. 224, 239–247 [140 L.Ed.2d 350, 118 S.Ct. 1219] (*Almendarez-Torres*); *Jones v. United States* (1999) 526 U.S. 227, 248–249 [143 L.Ed.2d 311, 119 S.Ct. 1215] (*Jones*).)

The high court has given several reasons for treating "the fact of a prior conviction" differently from other sentencing facts that may increase the maximum punishment for an offense. The court has noted that "recidivism" is a highly traditional basis for a court to increase a current offender's sentence, and that, unlike a typical "element," this factor relates not to the circumstances of the current offense, but only to punishment. Finally, in remarks upon which defendant primarily relies, the court has stressed that prior convictions have been obtained in proceedings which themselves included substantial procedural protections, including proof beyond reasonable doubt *and the right to a jury trial.* (*Apprendi, supra,* 530 U.S. 466, 488, 496; *Jones, supra,* 526 U.S. 227, 249; see *Almendarez-Torres, supra,* 523 U.S. 224, 243–244.)

On this basis, the Court of Appeal agreed with defendant that, under *Apprendi,* the absence of a jury-trial right in juvenile proceedings bars the use

of prior juvenile adjudications to increase the maximum sentence for a subsequent adult felony offense. In essence, the Court of Appeal found *Apprendi* requires a jury trial right *at some point* in the determination of any fact that may increase the maximum sentence for an adult felony conviction.

But the People urge that, because juvenile law adjudications of criminal conduct are subject to virtually all constitutional protections that apply to adult criminal trials—particularly including the standard of proof beyond a reasonable doubt—they fairly and reliably demonstrate the defendant's "recidivism." Thus, the People argue, if a prior juvenile proceeding included *all the rights and guarantees constitutionally applicable therein*, the resulting adjudication satisfies *Apprendi*'s justifications for the "prior conviction" exception, and is properly included within that exception, even though it did not include the right to a jury trial. Even if the "prior conviction" exception does not apply, the People assert, California complies with the *basic holding* of *Apprendi* by affording the right to a jury trial in the current case as to the sentencing "fact" therein at issue—i.e., the *existence* of the prior juvenile adjudication.

We generally agree with the People. As noted, *Apprendi* requires, at most, the right to a jury trial in the current criminal proceeding with respect to any sentencing fact that may increase the maximum punishment for the underlying conviction. California statutory law afforded defendant the right to have a jury determine the existence of the sentencing fact here at issue—whether he suffered a "prior felony conviction" as defined by the Three Strikes law—but he waived that right.

In any event, we find nothing in the *Apprendi* line of cases, or in other Supreme Court jurisprudence, that interferes, under the circumstances here presented, with what the high court deemed a sentencing court's traditional authority to impose increased punishment on the basis of the defendant's recidivism. That authority may properly be exercised, we conclude, when the recidivism is evidenced, as here, by a *constitutionally valid* prior adjudication of criminal conduct. As we explain below, the high court has expressly so held in analogous circumstances. (See *Nichols v. United States* (1994) 511 U.S. 738 [128 L.Ed.2d 745, 114 S.Ct. 1921] (*Nichols*).) We will therefore reverse the judgment of the Court of Appeal.

## FACTS AND PROCEDURE

An amended complaint, filed in December 2004, charged defendant Vince Vinhtuong Nguyen[2] with four felony counts: possession of a firearm by an ex-felon (§ 12022.1, subd. (a)(1)), possession of ammunition by an ex-felon (§ 12316, subd. (b)(1)), possession of a billy (§ 12020, subd. (a)(1)),[3] and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). The amended complaint also charged two misdemeanors, being under the influence of a controlled substance (*id.*, § 11550, subd. (a)) and possession of drug paraphernalia (*id.*, § 11364, subd. (a)). Finally, for sentencing purposes the amended complaint alleged, under the Three Strikes law, that defendant had suffered, as a qualifying "prior felony conviction" (§§ 667, subd. (d)(3), 1170.12, subd. (b)(3)), a 1999 juvenile adjudication for assault with a deadly weapon (§ 245, subd. (a)(1)), committed when he was 16 years of age or older.

In March 2005, pursuant to a negotiated disposition, defendant pled no contest to one felony, firearm possession by an ex-felon, and to a misdemeanor, possession of a billy. The charges of possession of methamphetamine and drug paraphernalia, ex-felon ammunition possession, and being under the influence of a controlled substance were dismissed.

Defendant waived his statutory right to a jury trial on the issue whether he "[had] suffered" the prior strike (§§ 1025, subds. (a)–(b), 1158), i.e., the 1999 juvenile adjudication. This question was tried to the court on the basis of documentary evidence, and the court found the strike allegation true. The court file in the 1999 juvenile matter indicates, among other things, that defendant there admitted to a violation of section 245, subdivision (a)(1).[4]

Defendant objected that because he had no right to a jury *in the juvenile proceeding*, use of his juvenile adjudication as a strike in the current case was a violation of his Sixth Amendment rights.[5] The court rejected this argument

---

[2] The Court of Appeal spelled defendant's middle name "Vinthuong," as do the briefs in this court. However, all trial court records, including the amended complaint and the abstract of judgment, spell it "Vinhtuong." We adopt the latter spelling.

[3] The offense described in section 12020, subdivision (a)(1) is a "wobbler," for which the defendant can be charged and/or convicted of either a felony or a misdemeanor. (See § 17, subds. (a), (b).)

[4] As the Court of Appeal explained, the documents submitted to the court were not made part of the appellate record, and were subsequently lost. Acting on its own motion, the Court of Appeal thus took judicial notice of the juvenile court file.

[5] Defendant does not claim that his juvenile adjudication fails to qualify, under the terms of the Three Strikes law, as a "prior felony conviction" for purposes of sentence enhancement. Nor, as the dissent points out, does he raise any constitutional objection other than the jury trial issue we address here.

and sentenced defendant to the lower term of 16 months for the firearm possession conviction (§ 18), doubled to 32 months because of the prior strike (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)).[6]

Defendant appealed, raising only the Sixth Amendment sentencing issue. In its first opinion, the Court of Appeal held that, because of the lack of a jury trial right in juvenile cases, the Sixth Amendment forbids use of a *contested* juvenile adjudication as a prior conviction to enhance the sentence for a subsequent adult offense. However, the court originally held that because defendant had admitted, in the juvenile case, that he committed the criminal conduct there at issue, his current sentence was not affected by the earlier deprivation of a right to jury trial, and he therefore was not entitled to relief.

The Court of Appeal granted rehearing to reconsider this latter holding. On rehearing, the court reversed the trial court. This time, the majority held that, because minors tried for criminal offenses as juveniles are denied the right to jury trials, the use of *any* juvenile adjudications as prior convictions to enhance subsequent adult sentences is prohibited by the Sixth Amendment.

We granted review.

## DISCUSSION[7]

Defendant argues, and the Court of Appeal agreed, that because he had no right to a jury trial in the prior juvenile proceeding, the Fifth, Sixth, and

---

[6] *Apprendi*'s jury-trial requirement applies only to sentencing facts that increase the *maximum* penalty for an offense; a sentencing court retains, under *Apprendi*, its discretion to impose a sentence *within the range* permitted solely by the underlying conviction, on the basis of facts not found by a jury. (E.g., *Apprendi, supra,* 530 U.S. 466, 481; see *Harris v. United States* (2002) 536 U.S. 545, 556–569 [153 L.Ed.2d 524, 122 S.Ct. 2406] [sentencing judge alone may find facts increasing *mandatory minimum* sentence].) The Three Strikes law provides that any determinate sentence for a current felony offense shall be doubled upon pleading and proof of one prior "strike." (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1).) Ex-felon firearm possession is punishable, under the determinate sentencing law (DSL), by a term of 16 months, or two or three years. (§ 18.) Here, the sentencing court imposed the *lower* DSL term of 16 months, doubled to 32 months under the Three Strikes law in light of the juvenile prior. That sentence did not exceed the three-year *upper* term for ex-felon firearm possession, but it did exceed the two-year *middle* term for this offense. Under the California scheme in effect at the time defendant was sentenced, the federal Constitution did not permit the sentencing judge alone to impose any sentence above the middle DSL term, except where an upper-term sentence was authorized by virtue of "the fact of a prior conviction." (See *Cunningham, supra,* 549 U.S. 270, 288–293; *People v. Black* (2007) 41 Cal.4th 799, 805, 809–810 [62 Cal.Rptr.3d 569, 161 P.3d 1130] (*Black*).) The court's use of the prior juvenile adjudication as a "strike" increased defendant's actual punishment above that middle-term maximum. Under such circumstances, we assume the *Apprendi* issue is properly raised in this case. The People do not contend otherwise.

[7] Amici curiae briefs have been filed in support of defendant by (1) Criminal Defense Clinic, Mills Legal Clinic of Stanford Law School, (2) California Public Defenders Association, and (3) Pacific Juvenile Defender Center, Juvenile Law Center, Juvenile Division of the Los

Fourteenth Amendments, as construed in *Apprendi*, bar use of the resulting criminal adjudication to enhance his maximum sentence in this adult proceeding. For several reasons, we reject the contention.

■ As indicated above, the high court determined in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. 466, 490.) Thus, under *Apprendi*, any "fact" that allows enhancement of an adult defendant's maximum sentence *for the current offense* must, unless the defendant waives his jury-trial right, be determined by a jury *in the current case*.

Defendant's claim, of course, does not come within this express holding. The statutorily relevant sentencing "fact" in this case is whether defendant's record includes a prior adjudication of criminal conduct that qualifies, under the Three Strikes law, as a basis for enhancing his current sentence. Aside from any exception that might apply here, the literal *rule* of *Apprendi* thus required only that a jury in the current proceeding determine the existence of such an alleged prior adjudication.

■ California statutory law afforded defendant precisely this right. Whenever, for purposes of enhancing the sentence on current charges, the prosecution alleges a prior conviction sustained by the defendant, and the defendant disputes the allegation, the question whether he or she "has suffered" the prior conviction must, unless a jury is waived, be submitted to a jury in the current proceeding. (§§ 1025, subds. (a), (b), 1158.) This jury-trial requirement would extend, of course, to a prior juvenile adjudication included within the Three Strikes law's definition of a "prior felony conviction." As we have explained, defendant expressly waived his right to a jury trial in the current proceeding on the issue whether he had suffered the alleged prior, and he agreed to submit that issue to the court.[8]

Angeles Public Defender, Alternate Public Defender, National Center for Youth Law and Youth Law Center (Pacific Juvenile Defender Center et al.). The Los Angeles County District Attorney has filed an amicus curiae brief in support of the People.

[8] Defendant suggests in passing that, even if *Apprendi* guarantees only the right to a jury trial in the present case concerning the "fact" of his prior adjudication, California's jury-trial statutes do not satisfy this requirement, because they sharply limit the issues to be decided by the jury trying a prior-conviction allegation. (§ 1025, subd. (c) [issue whether defendant is the

■ Nonetheless, defendant contends, as below, that under the principles of *Apprendi*, and regardless of his jury-trial rights in the current case, the lack of a jury-trial right in the *prior juvenile proceeding* precludes *all use* of the resulting adjudication to enhance the maximum sentence for his current offense. To support his view that *Apprendi* contemplates such a bar *by implication*, defendant cites language the high court has used to justify the single *exception* it consistently recognizes to the rule that a jury must find sentencing facts which increase the maximum punishment—the exception for "the fact of a *prior conviction.*" (*Apprendi*, *supra*, 530 U.S. 466, 490, italics added; see also, e.g., *Blakely*, *supra*, 542 U.S. 296, 301; *United States v. Booker* (2005) 543 U.S. 220, 231 [160 L.Ed.2d 621, 125 S.Ct. 738]; *Cunningham*, *supra*, 549 U.S. 270, 275; *Ice*, *supra*, 555 U.S. ___, ___ [129 S.Ct. 711, 714].) For reasons we now explain, we are not persuaded.

The "prior conviction" exception arises primarily from a pre-*Apprendi* case, *Almendarez-Torres*. There, an indictment charged the defendant with the offense of illegal reentry by a deported alien. The pertinent statute increased the maximum punishment if the prior deportation arose from the alien's conviction of one or more aggravated felonies. The indictment did not allege this latter circumstance. However, at his plea hearing, the defendant admitted it, and the court imposed sentence accordingly. On appeal, the defendant urged, among other things, that the Constitution required treatment of his prior convictions as an element of the current criminal offense, which must be charged in the indictment and proved to a jury beyond a reasonable doubt. The court disagreed, refusing to adopt a blanket rule that recidivism—a "highly traditional" basis upon which courts had imposed increased sentences—must be treated as an element. (*Almendarez-Torres*, *supra*, 523 U.S. 224, 243–247.)

In *Jones*, which also preceded *Apprendi*, the court addressed a federal statute that punished carjacking in interstate commerce with a maximum sentence of 15 years. However, maximum sentences of 25 years and life imprisonment, respectively, applied if the carjacking resulted in serious bodily injury or death. The government claimed the statute described only a single offense, subject to mere "sentencing enhancements" that need not be separately charged and could be imposed solely by a judge. The defendant

person who suffered the prior conviction must be tried to the court]; see *People v. Kelii* (1999) 21 Cal.4th 452, 455–459 [87 Cal.Rptr.2d 674, 981 P.2d 518] [issue whether prior conviction qualifies as "serious felony" for purposes of Three Strikes law must be determined by court]; *People v. Wiley* (1995) 9 Cal.4th 580, 583, 592 [38 Cal.Rptr.2d 347, 889 P.2d 541] [court, not jury, decides whether prior convictions were upon charges "brought and tried separately"].) However, defendant did not raise that issue below. As noted above, he waived his statutory jury-trial right as to the existence of the prior, and he focused exclusively on whether *Apprendi* permits *any* use of nonjury juvenile adjudications to enhance adult sentences. We therefore need not address his statutory argument here.

insisted the law established three separate offenses, each with its own requirement of charging notice and jury trial. The court chose the latter construction, primarily to avoid the constitutional problem, soon thereafter confirmed in *Apprendi*, of allowing an increased sentence, beyond the maximum provided for the charged offense, on the basis of additional facts not separately alleged or found by a jury.

During an extensive discussion of the Sixth Amendment concerns thus presented, the *Jones* court conceded *Almendarez-Torres* had recently held that sentence-enhancing prior convictions do not require charging notice and proof beyond reasonable doubt to a jury. (*Jones, supra*, 526 U.S. 227, 248.) This holding, *Jones* explained, had depended "in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in the indictment. The Court's repeated emphasis on the distinctive significance of recidivism leaves no question that the Court [in *Almendarez-Torres*] regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing. [Citations.]" (*Jones, supra*, at p. 249.)

In language upon which defendant relies here, the *Jones* court continued: "One basis for that possible constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, and certainly unlike the factor before us in this case, a prior conviction *must itself have been established* through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." (*Jones, supra*, 526 U.S. 227, 249, italics added.)

Soon after *Almendarez-Torres* and *Jones*, the court squarely held in *Apprendi* that except for the fact of a prior conviction, the Constitution requires any fact that authorizes a penalty beyond the prescribed statutory maximum for the charged offense to be separately alleged in the charging document and proved to a jury beyond a reasonable doubt. *Apprendi* addressed a New Jersey statute that specified the maximum sentence for the offense of possession of a firearm for an unlawful purpose, but provided additional punishment if the trial court found, by a preponderance of evidence, that the unlawful purpose was to intimidate on the basis of group bias.

The *Apprendi* court rejected New Jersey's attempt to defend the statute by invoking *Almendarez-Torres*. For multiple reasons, the court explained, the rule of *Almendarez-Torres* was confined to recidivism as a sentencing fact. As in *Jones*, the court noted *Almendarez-Torres*'s emphasis on recidivism as a highly " 'traditional' " basis for imposition of increased punishment by sentencing courts. (*Apprendi, supra*, 530 U.S. 466, 488.) As defendant emphasizes, however, the court also noted, as it had in *Jones*, that the

evidence of Almendarez-Torres's recidivism consisted of *prior adjudications* of criminal conduct obtained in proceedings which themselves afforded substantial constitutional protections.

Thus, the *Apprendi* court observed that "[b]ecause Almendarez-Torres had *admitted* the three earlier convictions for aggravated felonies—all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own—no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court." (*Apprendi, supra*, 530 U.S. 466, 488.) In other words, the court concluded, "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." (*Ibid.*)

Finally, the *Apprendi* court distinguished *Almendarez-Torres* from the situation presented in *Apprendi* itself. The court observed: "The reasons supporting an exception from the general rule for the statute construed in [*Almendarez-Torres*] do not apply to the New Jersey [hate crime] statute [at issue in *Apprendi*]. Whereas recidivism 'does not relate to the commission of the offense' itself, [citation], New Jersey's biased purpose inquiry goes precisely to what happened in the 'commission of the offense.' Moreover, there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." (*Apprendi, supra*, 530 U.S. 466, 496, italics added.)[9]

---

[9] Both we and the United States Supreme Court have confirmed that the "prior conviction" exception extends beyond the bare "fact" that such a conviction occurred, and permits the sentencing court, without a jury, to determine related issues about a prior conviction's relevance to the recidivist sentencing scheme, when those issues primarily involve either legal questions of a kind typically decided by judges, or factual matters that may be conclusively determined by examination of the official court record in the prior case. (See, e.g., *Shepard v. United States* (2005) 544 U.S. 13, 16, 26 [161 L.Ed.2d 205, 125 S.Ct. 1254] [sentencing court may examine statutory definition of prior charge, as well as official court records in prior case that conclusively establish elements therein adjudicated, to determine if nature of prior conviction qualifies it as basis for increasing current sentence]; *People v. McGee* (2006) 38 Cal.4th 682, 708–709 [42 Cal.Rptr.3d 899, 133 P.3d 1054] [under *Apprendi*, sentencing court, not jury, determines from court records in prior case whether it qualifies for use under recidivist sentencing scheme]; *Black, supra*, 41 Cal.4th 799, 818–820 [court, not jury, decides from court records whether prior convictions are numerous and of increasing seriousness]; *People v. Towne* (2008) 44 Cal.4th 63, 72–83 [78 Cal.Rptr.3d 530, 186 P.3d 10] (*Towne*) [court, not jury, may determine from records of prior convictions whether defendant served

From these remarks, defendant, the Court of Appeal, and the dissent have drawn the inference that, under *Apprendi*, the defendant's "recidivism" may enhance the current sentence only insofar as this "recidivism"—i.e., the defendant's prior *criminal behavior*—either is found true by a jury in the current proceeding, or was *already found true* in a prior proceeding wherein he or she had protections that included the right to a jury trial. In other words, they conclude, *Apprendi* means the jury-trial right—along with the right to charging notice and the right to proof beyond a reasonable doubt—must attach *at some point* to the determination of any fact about an adult offense, or offender, that increases the maximum punishment for the offense beyond the prescribed statutory range.

However, we do not read *Apprendi* so broadly. For reasons we set forth below, we agree with the majority view that the Fifth, Sixth, and Fourteenth Amendments, as construed in *Apprendi*, do not preclude the sentence-enhancing use, against an adult felon, of a prior valid, fair, and reliable adjudication that the defendant, while a minor, previously engaged in felony misconduct, where the juvenile proceeding included all the constitutional protections applicable to such matters, even though these protections do not include the right to jury trial.

The United States Supreme Court has confirmed that minors accused under the juvenile law of criminal conduct for which they may be confined in a correctional institution are constitutionally entitled to virtually all the procedural rights and protections they would enjoy as adult criminal defendants. (See *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428] (*Gault*) [fair notice of charges; counsel, appointed if necessary; confrontation and cross-examination; testimony by sworn witnesses; privilege against self-incrimination]; *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068] (*Winship*) [proof beyond a reasonable doubt]; *Breed v. Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779] [double jeopardy].) However, the court has concluded that the Constitution does not afford the right to a jury trial in juvenile proceedings. (*McKeiver, supra*, 403 U.S. 528.)

The various *McKeiver* opinions offered multiple reasons for declining to recognize such a right. At least five justices cited, as a paramount concern, a reluctance to deem juvenile adjudications "criminal proceedings" within the Sixth Amendment's ambit, given the juvenile system's greater emphasis on informality, rehabilitation, and *parens patriae* protection of the minor, as

prior prison terms, committed the current offense while on parole, or has performed poorly on parole or probation].) It is also now clear that *Apprendi* does not require a jury determination of facts bearing on whether to impose concurrent or consecutive sentences for separate offenses. (*Ice, supra*, 555 U.S. ___, ___–___ [129 S.Ct. 711, 716–719]; *Black, supra*, at pp. 820–823.)

opposed to the more formal, adversary, and punitive nature of the adult criminal system. (*McKeiver, supra,* 403 U.S. 528, 545–546, 547, 550 (plur. opn. of Blackmun, J.); *id.,* at pp. 551–552 (conc. opn. of White, J.).) As Justice White further noted, such differences ameliorate the need, in the juvenile system, for the jury's role as a community buffer against government oppression, judicial bias, and politicized justice. (*Id.,* at p. 552 (conc. opn. of White, J.).)

On the other hand, five concurring justices in *McKeiver* also were strongly influenced by their determination that a jury is not essential to fair and reliable *factfinding* in a juvenile case. Thus, Justice Blackmun deemed it incorrect to say that "the jury is a necessary component of accurate factfinding" (*McKeiver, supra,* 403 U.S. 528, 543 (plur. opn. of Blackmun, J.)), and further opined that "[t]he imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the factfinding function . . ." (*id.,* at p. 547). Justice White agreed, noting that "[a]lthough the function of the jury is to find facts, that body is not necessarily or even probably better at the job than the conscientious judge." (*Id.,* at p. 551 (conc. opn. of White, J.).)

These factors have persuaded the overwhelming majority of courts to reject the contention defendant makes in this case. Except for the decision here under review, all California Court of Appeal panels to address the issue in published opinions, both before and after *Apprendi*, have squarely held that the Fifth, Sixth, and Fourteenth Amendments permit the use of prior juvenile adjudications to enhance the sentences for subsequent adult offenses, even though there is no right to a jury trial in juvenile proceedings. The United States Supreme Court has denied all petitions for certiorari arising from these cases. (*People v. Del Rio* (2008) 165 Cal.App.4th 439, 441 [80 Cal.Rptr.3d 615]; *People v. Buchanan* (2006) 143 Cal.App.4th 139, 149 [49 Cal.Rptr.3d 137], cert. den. *sub nom. Buchanan v. California* (2007) 551 U.S. 1107 [168 L.Ed.2d 250, 127 S.Ct. 2920]; *People v. Superior Court (Andrades)* (2003) 113 Cal.App.4th 817, 830–834 [7 Cal.Rptr.3d 74], cert. den. *sub nom. Andrades v. California* (2004) 543 U.S. 884 [160 L.Ed.2d 142, 125 S.Ct. 121]; *People v. Lee* (2003) 111 Cal.App.4th 1310, 1316 [4 Cal.Rptr.3d 642], cert. den. *sub nom. Lee v. California* (2004) 542 U.S. 906 [159 L.Ed.2d 271, 124 S.Ct. 2840]; *People v. Smith* (2003) 110 Cal.App.4th 1072, 1079 [1 Cal.Rptr.3d 901]; *People v. Bowden* (2002) 102 Cal.App.4th 387, 393–395 [125 Cal.Rptr.2d 513]; *People v. Fowler* (1999) 72 Cal.App.4th 581, 586 [84 Cal.Rptr.2d 874]; see *People v. Palmer* (2006) 142 Cal.App.4th 724, 729–734 [47 Cal.Rptr.3d 864] [*Apprendi* allows use of prior Nevada misdemeanor conviction to enhance sentence, even though there was no right to jury trial in Nevada proceeding].)

The overwhelming majority of federal decisions and cases from other states have reached the same conclusion in the wake of *Apprendi*, holding that nonjury juvenile adjudications may be used to enhance later adult sentences. Again, the United States Supreme Court has declined numerous opportunities to decide otherwise.[10]

The majority decisions reason, in essence, as follows: Prior juvenile adjudications substantially satisfy all the reasons set forth in *Almendarez-Torres*, *Jones*, and *Apprendi* why prior convictions may be employed to increase the maximum punishment for a subsequent adult offense without the need for jury findings in the later case. Like prior adult criminal convictions, such prior juvenile judgments do not involve facts about the current offense that were withheld from a jury in the current case, but instead concern the defendant's *recidivism*—i.e., his or her status as a *repeat offender*—a basis on which courts, acting without juries, traditionally have imposed harsher sentences. Moreover, the prior criminal misconduct establishing this recidivism was previously and reliably adjudicated in proceedings that included all the procedural protections the Constitution requires *for such proceedings*— indeed, every substantial safeguard required in an adult criminal trial *except* the right to a jury. Use of such reliably obtained juvenile judgments of prior criminality to enhance later adult sentences does not offend an *adult defendant's* constitutional right to a jury trial in an adult criminal proceeding. Conversely, it makes little sense to conclude, under *Apprendi*, that a judgment of juvenile criminality which the Constitution deemed fair and reliable enough, when rendered, to justify confinement of the minor in a correctional institution is nonetheless constitutionally inadequate for later use to establish

---

[10] (E.g., *U.S. v. Matthews* (1st Cir. 2007) 498 F.3d 25, 34–36, cert. den. *sub nom. Matthews v. United States* (2008) 552 U.S. 1238 [170 L.Ed.2d 290, 128 S.Ct. 1463]; *U.S. v. Crowell* (6th Cir. 2007) 493 F.3d 744, 749–751, cert. den. *sub nom. Crowell v. United States* (2008) 552 U.S. 1105 [169 L.Ed.2d 739, 128 S.Ct. 880]; *U.S. v. Burge* (11th Cir. 2005) 407 F.3d 1183, 1187–1191, cert. den. *sub nom. Burge v. United States* (2005) 546 U.S. 981 [163 L.Ed.2d 467, 126 S.Ct. 551]; *U.S. v. Jones* (3d Cir. 2003) 332 F.3d 688, 694–696, cert. den. *sub nom. Jones v. United States* (2004) 540 U.S. 1150 [157 L.Ed.2d 1044, 124 S.Ct. 1145]; *U.S. v. Smalley* (8th Cir. 2002) 294 F.3d 1030, 1031–1033, cert. den. *sub nom. Smalley v. United States* (2003) 537 U.S. 1114 [154 L.Ed.2d 790, 123 S.Ct. 870]; *People v. Mazzoni* (Colo.Ct.App. 2006) 165 P.3d 719, 722–723; *State v. McFee* (Minn. 2006) 721 N.W.2d 607, 615–619; *State v. Weber* (2006) 159 Wn.2d 252 [149 P.3d 646, 649–653], cert. den. *sub nom. Weber v. Washington* (2007) 551 U.S. 1137 [168 L.Ed.2d 714, 127 S.Ct. 2986]; *Nichols v. State* (Fla.Dist.Ct.App. 2005) 910 So.2d 863, 864–865; *Ryle v. State* (Ind. 2005) 842 N.E.2d 320, 321–323, cert. den. *sub nom. Ryle v. Indiana* (2006) 549 U.S. 836 [166 L.Ed.2d 63, 127 S.Ct. 90]; *State v. Hitt* (2002) 273 Kan. 224 [42 P.3d 732, 740], cert. den. *sub nom. Hitt v. Kansas* (2003) 537 U.S. 1104 [154 L.Ed.2d 772, 123 S.Ct. 962]; see *State v. Harris* (2005) 339 Ore. 157 [118 P.3d 236, 238–246] [holding that lack of jury trial in juvenile proceedings does not prevent all use of prior juvenile adjudications to enhance later adult sentences, but does mean defendant is entitled to jury trial *in the adult case* as to the *fact* of the prior adjudication]; but see *U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187, 1191–1195; *State v. Brown* (La. 2004) 879 So.2d 1276, 1281–1290, cert. den. *sub nom. Louisiana v. Brown* (2005) 543 U.S. 1177 [161 L.Ed.2d 161, 125 S.Ct. 1310].)

the same individual's recidivism as the basis for an enhanced adult sentence. Such a determination would preclude a rational and probative basis for increasing an adult offender's sentence—that he or she was not deterred from criminal behavior by a youthful brush with the law—unless juveniles were afforded a right to jury trial, *which the Constitution does not require.*

However, the minority view, urged by defendant and accepted by the Court of Appeal, is that the right to a jury trial in proceedings leading to the prior adjudication is essential to permitting its use for later enhancement of an adult sentence. As the Court of Appeal suggested, "the jury trial right is an indispensable part of ' "a fundamental triumvirate of procedural protections intended to guarantee the reliability of criminal convictions," ' " and, under *Apprendi*, " ' "one of the requisite procedural safeguards" necessary for a prior conviction to be exempt from its rule.' "

We agree with the majority view, and disagree with defendant and the instant Court of Appeal. For the reasons repeatedly stated by the majority decisions cited above, we conclude that the *Apprendi* rule does not preclude use of nonjury juvenile adjudications to enhance later adult sentences.

■ The United States Supreme Court has left no doubt of the importance of the jury trial guarantee, among other due process and fair trial protections, in the formal, fully adversary, and fully penal context in which one is convicted of, and sentenced for, a crime committed as an adult. Under *Apprendi* and its progeny, *every previously unadjudicated fact about an adult offense or offender* that authorizes an increase in the maximum sentence for the adult crime must be specifically alleged or charged, presented to a jury, and proved beyond reasonable doubt except to the extent the defendant waives those rights. Moreover, in concluding that prior convictions are available to enhance later sentences without new jury involvement, the court has stressed that the defendant enjoyed, among others, the right to a jury trial in those prior adult proceedings.

But the court has struck a delicate balance as to the constitutional treatment of juveniles alleged to have violated the criminal law. Such a juvenile, like an adult accused, faces both the stigma of adjudged criminality and the significant loss of liberty by confinement in a correctional institution if the allegations prove true. Thus, "[t]he same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child." (*Winship, supra,* 397 U.S. 358, 365.) Accordingly, the highest standard of factual certainty, proof beyond a reasonable doubt, attaches equally to adult and juvenile proceedings. (*Id.,* at p. 368.) Similar considerations have led the court to insist that most other procedural protections available to accused adults—including the rights to counsel (appointed

if necessary), notice of charges, confrontation and cross-examination, and protection against compelled self-incrimination and double jeopardy—be equally available to juveniles subject to adjudication of criminal conduct. (*Gault, supra*, 387 U.S. 1, 31–57; *Breed v. Jones, supra*, 421 U.S. 519, 528–531.)

The court's decision in *McKeiver* not to find a constitutional jury trial right in juvenile proceedings reflected its concern that the introduction of juries in that context would interfere too greatly with the effort to deal with youthful offenders by procedures less formal and adversarial, and more protective and rehabilitative—at least to a degree—than those applicable to adult defendants. (*McKeiver, supra*, 403 U.S. 528, 545–551 (plur. opn. of Blackmun, J.); *id.*, at pp. 551–553 (conc. opn. of White, J.).) But the *McKeiver* majority made clear that the absence of a right to trial by jury did not appreciably undermine the *accuracy* of the *factfinding function* in juvenile cases. (*McKeiver, supra*, at p. 543 (plur. opn. of Blackmun, J.); *id.*, at p. 551 (conc. opn. of White, J.).)

If the *parens patriae* features of the juvenile justice system have succeeded in rehabilitating a youthful offender, all well and good. But if the person was not deterred, and thus reoffends as an adult, this recidivism is a highly rational basis for enhancing the sentence for the adult offense. So long as an accused adult is accorded his or her right to a jury trial *in the adult proceeding* as to all facts that influence the maximum permissible sentence, no reason appears why a constitutionally reliable prior adjudication of criminality, obtained pursuant to *all procedural guarantees constitutionally due to the offender in the prior proceeding*—specifically including the right to proof beyond a reasonable doubt—should not also be among the facts available for that sentencing purpose.

We do not read the passages from *Almendarez-Torres, supra*, 523 U.S. 224, *Jones, supra*, 526 U.S. 227, and *Apprendi, supra*, 530 U.S. 466, upon which defendant and the Court of Appeal have relied, as *prohibiting* the use of previously adjudicated criminal misconduct to authorize an increased sentence in a later criminal case *unless* the prior proceeding—whether juvenile or adult—specifically included the right to a jury trial. Defendant's contrary argument is unconvincing in several respects.

We first note the obvious: Neither *Jones* nor *Apprendi* was directly concerned with deciding the circumstances under which prior adjudications of criminal conduct may be used to enhance the maximum sentence for a subsequent adult offense. Hence, the court's comments on that subject were dictum.

Moreover, nothing in *Jones* or *Apprendi*, or in *Almendarez-Torres* itself, stated or implied that a prior criminal adjudication forming the basis of a

"recidivism" sentencing factor in an adult criminal proceeding must always have been obtained in a proceeding that included, in particular, the right to jury trial. Those cases cited a group of procedural rights and safeguards that make prior adult convictions fair and reliable evidence of previous criminal misconduct, but they did not state that each and every one of these guarantees, or any one of them in particular, is essential to the availability of a prior criminal adjudication to furnish such proof.

Finally, as indicated above, *Apprendi* and its progeny concern an *adult's* right to jury findings, in the adult case, of all previously unadjudicated facts that bear upon the maximum sentence for the adult offense. On the other hand, these decisions have suggested that recidivism already adjudicated in fair and reliable prior proceedings may be used to enhance later sentences without new jury involvement, and the high court has not disturbed *McKeiver*'s determination that juvenile adjudications of criminality *are* constitutionally fair and reliable even though the Constitution does not require jury trials in juvenile proceedings.

Under these circumstances, we decline to hold that a prior juvenile adjudication, highly probative on the issue of recidivism, is unavailable to enhance the punishment for the individual's subsequent adult offenses, for the sole reason that there was no right to a jury trial in the juvenile case.

Defendant and his amici curiae, like the Court of Appeal majority, stress the philosophical difference between juvenile and adult criminal proceedings. This line of reasoning proposes that proceedings under the juvenile law may dispense with jury trials only because, as *parens patriae* attempts by the state to protect, rehabilitate, and reform wayward minors, they are not fully "criminal" in nature, and they lack the truly penal objectives and consequences of the system that governs adult violations of law. Hence, the argument runs, even if a juvenile adjudication is reliable and procedurally fair enough *for juvenile purposes*, it is not sufficiently fair and reliable, without the right to a jury trial, for use to affect a later adult criminal sentence.

Again, we disagree, for the reasons indicated above. Sentence enhancement based on recidivism flows from the premise that the defendant's current criminal conduct is more serious because he or she previously was found to have committed criminal conduct and did not thereafter reform. A prior juvenile adjudication, like a prior adult conviction, is a rational basis for increased punishment on the basis of recidivism. Indeed, a juvenile prior demonstrates that the defendant did not respond to the state's attempt at early intervention to prevent a descent into further criminality. The high court has never held that the Constitution places a direct restriction on the use of prior juvenile adjudications for this purpose.

Accordingly, we are persuaded that *Apprendi* does not bar the use of a constitutionally valid, fair, and reliable prior adjudication of criminal conduct to enhance a subsequent adult sentence simply because the prior proceeding did not include the right to a jury trial. For the reasons discussed at length above, we agree with the court in *McKeiver*, at least for this purpose, that the absence of jury trials from juvenile proceedings does not significantly undermine the fairness or accuracy of juvenile factfinding.[11]

Under these circumstances, the philosophical and legal distinctions between the juvenile and adult criminal justice systems—differences that informed *McKeiver's* determination not to impose a jury-trial entitlement in juvenile cases—fail to convince us that adjudications of criminal conduct obtained in juvenile proceedings without the right to jury trial are unavailable, under *Apprendi*, to increase the maximum punishment for later adult offenses.[12]

---

[11] Taking issue with *McKeiver's* premise that the absence of a jury does not materially undermine factfinding accuracy, the Court of Appeal cited *Ballew v. Georgia* (1978) 435 U.S. 223 [55 L.Ed.2d 234, 98 S.Ct. 1029], a post-*McKeiver* case, which held that conviction of a nonpetty offense by a state jury of fewer than six persons violates the Sixth and Fourteenth Amendments. (Cf. *Williams v. Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893] [holding that jury of as few as six persons in state criminal trial for nonpetty offense does not violate the Constitution].) As the Court of Appeal noted, the high court in *Ballew* cited statistical studies suggesting the diminished effectiveness of "group deliberation," and thus diminished factfinding accuracy, as the number of jurors decreased. (*Ballew, supra,* at pp. 232–239.) But *Ballew* was concerned with the undoubted right to a jury trial as to the facts of a charged *adult offense*, and it focused on whether the accuracy of factfinding rose or fell depending on the *number of lay jurors* on the panel. Though the court's opinion in *Ballew* briefly described one study indicating a significant degree of judge-jury disagreement in civil cases (*id.,* at p. 238), it did not suggest that, in a juvenile proceeding where a jury is *not* required, *judicial* factfinding is insufficiently reliable.

Defendant also notes that in *Ring v. Arizona* (2002) 536 U.S. 584 [153 L.Ed.2d 556, 122 S.Ct. 2428], which applied *Apprendi* to sentencing facts supporting eligibility for the death penalty, the court rejected Arizona's argument that judicial findings on this subject were sufficiently reliable to satisfy the Sixth Amendment. The court explained that "[t]he Sixth Amendment jury trial right . . . does not turn on the relative rationality, fairness, or efficiency of potential factfinders." (*Ring,* at p. 607.) Again, however, *Ring* was dealing with an *adult's* right to a jury trial on all previously unadjudicated facts bearing on the maximum punishment for the adult offense (in Ring's case, that he was a major participant in an armored car robbery, and that he personally shot and killed the vehicle's driver). *Ring* was not concerned with facts about *recidivism*, already reliably determined in a *juvenile* proceeding in which the Constitution did not require a jury trial.

[12] Amici curiae Pacific Juvenile Defender Center et alia argue that to allow the use of juvenile adjudications to enhance later adult sentences "is inconsistent with the purpose of juvenile court and disregards California's carefully drawn boundaries between juvenile and adult court jurisdiction." This argument, essentially based on nonconstitutional state law, overlooks the express provision in California's Three Strikes law that certain serious prior juvenile adjudications shall be deemed "prior convictions" available for adult sentence enhancement. (§§ 667, subd. (d)(3), 1170.12, subd. (b)(3).)

Nor does the use of nonjury juvenile adjudications to enhance later adult sentences compromise the core purpose of the constitutional right to a jury trial—to provide a criminal defendant, by application of the lay common sense of the community, "with . . . an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." (*Duncan v. Louisiana* (1968) 391 U.S. 145, 156 [20 L.Ed.2d 491, 88 S.Ct. 1444].) Implicit in the high court's juvenile justice decisions is the premise that this particular safeguard is not constitutionally essential to a fair and reliable adjudication *in a juvenile case*. Once that adjudication is made, one facing a subsequent adult sentence gains, in the adult proceeding, no meaningful jury-trial protection against government oppression or judicial bias—no "bulwark at trial between the State and the accused" (*Ice, supra*, 555 U.S. ___, ___ [129 S.Ct. 711, 718])—by virtue of a rule barring use of the earlier finding to enhance the sentence for the current adult offense.

Finally, we deem highly pertinent a decision of the high court in which, overruling prior authority, the court concluded, under analogous circumstances, that a constitutionally valid prior criminal adjudication may be used to enhance the maximum penalty for a subsequent felony offense, even though the prior proceeding did not include all the safeguards required for felony trials.

Thus, in *Scott v. Illinois* (1979) 440 U.S. 367 [59 L.Ed.2d 383, 99 S.Ct. 1158], the court had ruled that one charged with a misdemeanor has no constitutional right to counsel when no period of incarceration is imposed. The next year, in *Baldasar v. Illinois* (1980) 446 U.S. 222 [64 L.Ed.2d 169, 100 S.Ct. 1585], a divided court determined that such an uncounseled misdemeanor conviction, though itself constitutional under *Scott*, could not constitutionally be used to convert a second misdemeanor into a felony for purposes of an Illinois recidivism statute.

In *Nichols*, the court overruled *Baldasar*, holding that a prior constitutionally valid uncounseled misdemeanor conviction could be employed in a subsequent federal felony proceeding to increase the defendant's criminal history score, and thus his maximum punishment, for the felony offense. Among other things, the court noted, as relevant here, that recidivism is a traditional basis for sentence enhancement, that this factor goes only to punishment and does not involve the circumstances of the current offense, and that the criminal conduct evidenced by the prior conviction was subject

to the standard of proof beyond a reasonable doubt. (*Nichols, supra*, 511 U.S. 738, 747–748.) In our view, the court's holding in *Nichols* strongly supports our similar result here.[13]

In its most recent examination of the *Apprendi* rule, the high court majority has explained that "[t]he rule's animating principle is the preservation of the jury's historic role as a bulwark between the State and the accused at the trial for an alleged offense. [Citation.] Guided by that principle, our opinions make clear that the Sixth Amendment does not countenance legislative encroachment on the jury's traditional domain. [Citation.] We accordingly [have] considered whether the finding of a particular fact was understood as within 'the domain of the jury . . . by those who framed the Bill of Rights.' [Citation.] In undertaking this inquiry, we remain cognizant that administration of a discrete criminal justice system is among the basic sovereign prerogatives States retain. [Citation.]" (*Ice, supra*, 555 U.S. ___, ___ [129 S.Ct. 711, 717].) In deciding whether *Apprendi* should be extended to situations not previously considered, we must bear in mind "[t]hese twin considerations—historical practice and respect for state sovereignty." (*Ibid.*)

As indicated above, the high court's decisions establish that neither juvenile adjudications nor previously adjudicated recidivism as a sentencing factor is, as a matter of "historical practice," within the "traditional domain"

---

[13] We further observe that we see no fatal gap between our holding here and certain portions of our analysis in *Towne, supra*, 44 Cal.4th 63. There we suggested that, under *Apprendi*, the sentencing court alone may find, as the basis for an increased maximum sentence, that the defendant performed poorly during a previous term of parole or probation arising from an earlier conviction, *if* the evidence of such poor performance is the defendant's conviction of one or more new crimes committed during the parole or probationary period. On the other hand, we said, a nonjury "poor performance" finding could not be based "upon . . . evidence of misconduct that was not previously adjudicated in a criminal trial." (*Towne, supra*, at p. 82.) In particular, we admonished, even evidence that a prior probation or parole had been *revoked* on the basis of new criminal conduct could not support a "poor performance" finding by the current sentencing court acting without a jury, because revocation proceedings "do not entail the same procedural safeguards as a criminal trial." (*Id.*, at p. 83.) We noted that although parolees and probationers faced with revocation proceedings are entitled to notice and an opportunity to appear, be heard, and present evidence, "[t]he right to a jury trial and the requirement of proof beyond a reasonable doubt . . . do not apply in revocation proceedings." (*Ibid.*) Of course, like *Almendarez-Torres, Jones*, and *Apprendi*, *Towne* was not specifically concerned with the use of prior *juvenile adjudications* as evidence of recidivism to increase the maximum punishment for a later crime. Moreover, as in *Almendarez-Torres, Jones*, and *Apprendi*, nothing in *Towne* declares that unless the prior adjudication specifically included the right to a jury trial, its use to demonstrate recidivism that may increase the maximum punishment for a later offense is forbidden. The probation and parole revocation proceedings discussed in *Towne* lack *both* the right to a jury trial *and the requirement of proof beyond a reasonable doubt*. Juvenile adjudications, on the other hand, include the latter requirement, thus substantially bolstering their fairness and reliability as evidence of recidivism. Our reasoning in *Towne* thus does not preclude us from deciding here that the Constitution permits the use of prior juvenile adjudications for that purpose.

of juries. On the other hand, California, in the exercise of its sovereign prerogative, has made the rational determination, expressed in its Three Strikes law, that certain serious prior juvenile adjudications should serve as "prior felony convictions" for the purpose of enhancing the sentences for subsequent adult felony offenses.[14] The "twin considerations" identified in *Ice* thus clearly weigh in favor of a conclusion that the *Apprendi* rule should not be construed to bar such use.

We therefore hold, contrary to the Court of Appeal, that the absence of a constitutional or statutory right to jury trial under the juvenile law does not, under *Apprendi*, preclude the use of a prior juvenile adjudication of criminal misconduct to enhance the maximum sentence for a subsequent adult felony offense by the same person.

Accordingly, the judgment of the Court of Appeal is reversed.

George, C. J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J., Dissenting.**—In California, a minor accused of a crime in a juvenile court proceeding—unlike a person accused in an adult criminal proceeding—has no right to a jury trial. The lack of that right becomes an issue when, as here, a juvenile court adjudication is based on one of certain statutorily specified felonies and later the juvenile, by then an adult, commits another felony. At that point, California's "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12) comes into play. Because of the prior juvenile court adjudication, the sentence for the new felony conviction is doubled, as happened here; with two such priors, the prison term is a minimum of 25 years to life.

Central here is the United States Supreme Court's decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), which holds that the federal Constitution requires a jury trial on "any fact" that increases the maximum penalty for a charged offense. Is that right violated when, as here, the additional punishment is imposed because of prior juvenile criminal conduct for which there was no right to a jury trial? The majority perceives no problem. I do.

**I**

As relevant in this case, defendant as an adult was charged with being a convicted felon in possession of a firearm, a felony. (Pen. Code, § 12021.1,

---

[14] Indeed, the Three Strikes provisions embodied in section 1170.12, including its provision for use of prior juvenile adjudications as strikes, were enacted as an initiative measure by popular vote. (Prop. 184, as approved by voters, Gen. Elec. (Nov. 8, 1994).)

subd. (a).) The prosecution alleged that he had a prior juvenile court adjudication based on a violation of subdivision (a)(1) of Penal Code section 245 (assault with a deadly weapon or by means of force likely to inflict great bodily injury),[1] and that this adjudication was a "strike" under the Three Strikes law. Defendant pled guilty in return for dismissal of other charges against him. At a court trial on the alleged strike, defendant conceded the prior adjudication's existence. But, citing *Apprendi*, *supra*, 530 U.S. 466, he argued that the use of that prior adjudication to increase the maximum penalty for the new offense violated his Sixth Amendment right to a trial by jury because the adjudication occurred in juvenile court, where he had no right to a jury trial.

The trial court rejected that argument, found the allegation of the prior juvenile adjudication to be true, and sentenced defendant to a total of 32 months in prison (based on 16 months' imprisonment for the current felony, doubled because of the prior adjudication). On defendant's appeal, the Court of Appeal reversed the trial court's judgment. This court granted the Attorney General's petition for review.

## II

In a quintet of relatively recent decisions (*Oregon v. Ice* (2009) 555 U.S. ___ [172 L.Ed.2d 517, 129 S.Ct. 711]; *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856]; *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738] (*Booker*); *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]; *Apprendi*, *supra*, 530 U.S. 466), the United States Supreme Court has set forth the constitutional principle that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.)

What led to the development of this constitutional rule was the high court's concern about "a new trend in the legislative regulation of sentencing."

---

[1] A prior *adult conviction* for violating subdivision (a)(1) of Penal Code section 245 is a strike if the assault was committed with a deadly weapon (Pen. Code, §§ 667, subd. (d)(1), 1192.7, subd. (c)(31)), but *not* if it was committed by means of force likely to inflict great bodily injury. (*People v. Haykel* (2002) 96 Cal.App.4th 146, 148 [116 Cal.Rptr.2d 667]; see also *People v. Delgado* (2008) 43 Cal.4th 1059, 1065 [77 Cal.Rptr.3d 259, 183 P.3d 1226].) But a prior *juvenile court adjudication* for violating the same statute is a strike not only when the assault was committed with a deadly weapon but also when it was committed by means of force likely to inflict great bodily injury. (See Pen. Code, §§ 667, subd. (d)(3)(B), 1192.7, subd. (c)(31); Welf. & Inst. Code, § 707, subd. (b)(14).) This difference between the two categories of priors appears to present a serious constitutional issue. But it was not raised in this case and thus need not be resolved now.

(*Booker*, *supra*, 543 U.S. at p. 236.) The court noted in *Booker* that various legislatures had begun to enact sentencing laws providing that if the trial court found certain statutorily specified facts to exist, it was authorized—and sometimes mandated—to impose a sentence greater than would otherwise have been statutorily permitted. These sentencing laws effectively increased the power of trial courts but diminished that of juries. (*Ibid.*) In the words of *Booker*: "As the enhancements became greater, the jury's finding of the underlying crime became less significant. And the enhancements became very serious indeed. . . . [¶] . . . The new sentencing practice forced the Court to address the question how the right of jury trial could be preserved, in a meaningful way guaranteeing that the jury would still stand between the individual and the power of the government under the new sentencing regime." (*Id.* at pp. 236–237, citations omitted.)

California's Three Strikes law exemplifies that current trend of harsh sentence enhancements. Under this law, *any* felony, even relatively minor ones ordinarily punishable by a maximum of three years in prison, *must be punished* by a sentence of at least 25 years to life in prison when the defendant has two qualifying prior juvenile adjudications.[2] (Pen. Code, § 667, subds. (d)(3), (e)(2)(A).) When, as here, there is only one such adjudication, the sentence on the underlying felony is doubled. (Pen. Code, § 667, subds. (d)(3), (e)(1).) Unlike an adult accused of a crime, a minor so accused in a juvenile court proceeding has, under California law, no right to have a jury determine the truth of the conduct underlying the offense.[3] Yet, as I have just pointed out, under the Three Strikes law a prior juvenile court adjudication increases "the range of sentences possible" (*Booker*, *supra*, 543 U.S. at p. 236) for an adult charged with a felony, and the increased sentence, to use *Booker*'s words, can be "very serious indeed" (*ibid.*). In basing the additional punishment on alleged facts whose truth was never determined by a jury, the Three Strikes law is, in my view, contrary to the holding of *Apprendi*, *supra*, 530 U.S. at page 490, that under the Sixth Amendment to the federal Constitution a criminal defendant has a right to have a jury determine "any fact" that increases the penalty for a charged offense.

The majority advances two reasons for concluding otherwise. As explained below, its reasons are not persuasive.

[2] Although the increased penalties of California's Three Strikes law are mandatory, a trial court has the power to order a juvenile prior as well as a prior adult conviction struck in the interest of justice. (See Pen. Code, § 1385; *People v. Williams* (1998) 17 Cal.4th 148, 161 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

[3] When the juvenile court agrees with the prosecution that the minor is "not a fit and proper subject to be dealt with under the juvenile court law" (Welf. & Inst. Code, § 707, subd. (a)(1)), the minor is charged as an adult, in which case the minor has the right to a jury trial.

First, the majority asserts that defendant's claim does not come within the "express holding" (maj. opn., *ante*, at p. 1015) of *Apprendi* that "[o]ther than the fact of a prior conviction, *any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury*, and proved beyond a reasonable doubt" (*Apprendi, supra*, 530 U.S. at p. 490, italics added). According to the majority, here the "fact that increases the penalty . . . beyond the prescribed statutory maximum" (*ibid.*) was not defendant's felonious *conduct* that led to the prior adjudication in juvenile court; rather, the majority asserts, it was the *adjudication* itself. And, the majority points out, under California law defendant did have the right to have a jury determine whether he was indeed the person who suffered that prior juvenile court adjudication, a right that defendant waived. Thus, the majority concludes, defendant was not denied the right to a jury trial that *Apprendi* requires.

The majority is correct that under California's Three Strikes law the existence of a prior juvenile court adjudication of criminal conduct is the fact that triggers increased punishment. But I construe the italicized language of *Apprendi, supra*, 530 U.S. at page 490, which I quoted in the preceding paragraph, as requiring a jury trial not only on the "fact" of the *existence* of a prior adjudication, as the majority does, but also, unlike the majority, as requiring a jury trial on *the conduct* that led to that adjudication.

The prior juvenile court adjudication forming the basis for the increased punishment is simply a legal document telling us that, in a proceeding in which the accused minor had no right to a jury trial, a juvenile court judge determined that the minor committed a criminal offense. The essential teaching of the high court's decision in *Apprendi, supra*, 530 U.S. 466, is that such nonjury determinations cannot be used to increase criminal penalties beyond prescribed statutory maximums. Thus, to permit the mere existence of a prior nonjury juvenile court adjudication to increase the penalty for a later crime beyond the statutory maximum is contrary to the rationale underlying *Apprendi*. Indeed, the majority's reasoning here opens the door to wholesale evasion or trivialization of the holding in *Apprendi*. Under the majority's reasoning, the Legislature could enact or amend laws to define any sentence-increasing circumstance of the current offense in terms of the existence of a prior court determination or adjudication. Under such a law, a trial judge, rather than a jury, would determine whether a statutorily specified aggravating circumstance (for example, use of a firearm or infliction of great bodily injury) had occurred during the commission of the current crime, after which the jury would be permitted to decide only whether the trial judge had actually made that specific factual determination. This cannot be what the United States Supreme Court intended in *Apprendi*.

Also, the majority's conclusion here is inconsistent with this court's recent decision in *People v. Towne* (2008) 44 Cal.4th 63 [78 Cal.Rptr.3d 530, 186 P.3d 10]. There, this court held that under *Apprendi, supra*, 530 U.S. 466, a defendant's sentence may not be increased based on a prior determination, in a nonjury revocation proceeding, that the defendant had violated the conditions of probation or parole. *Towne* explained that a sentence may be increased for a prior probation or parole violation only when that violation is based on a conviction for a criminal offense. (*Towne, supra*, 44 Cal.4th at pp. 82–83.) In the latter situation, of course, the defendant would have had the right to a jury trial in the proceeding that resulted in the conviction. Implicit in the holding of *Towne* is the view that the constitutional jury trial right extends to *the conduct* underlying a prior nonjury adjudication and not merely to the existence of that nonjury adjudication. Thus, the majority's conclusion here—that the high court's holding in *Apprendi* can be satisfied by having a jury determine the mere existence of a prior nonjury juvenile court adjudication of criminal conduct—cannot be reconciled with this court's decision in *Towne* that *Apprendi* is *not* satisfied by having a jury determine only the existence of a prior nonjury adjudication of a probation or parole violation.

I now turn to the majority's second reason for concluding that the use of a prior juvenile court adjudication to increase an adult defendant's sentence beyond the "prescribed statutory maximum" (*Apprendi, supra*, 530 U.S. at p. 490) does not violate the defendant's constitutional right to a jury trial, even though the defendant had no right in that prior proceeding to have a jury determine the truth of the facts underlying the prior adjudication. As mentioned earlier, this case is governed by the United States Supreme Court's decision in *Apprendi*, which holds: "Other than *the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Ibid.*, italics added.)

The majority observes that juvenile priors "concern the defendant's recidivism—i.e., his or her status as a repeat offender" (maj. opn., *ante*, at p. 1021, italics omitted), and "the prior criminal misconduct establishing this recidivism was previously and reliably adjudicated in proceedings that included . . . every substantial safeguard required in an adult criminal trial *except* the right to a jury" (*ibid.*). Thus, the majority reasons, "the *Apprendi* rule does not preclude use of nonjury juvenile adjudications to enhance later adult sentences." (*Id.* at p. 1022.) Implicit in that reasoning is the majority's view that juvenile priors fall within *Apprendi*'s "fact of a prior conviction" language, which creates an exception to *Apprendi*'s holding that a defendant has a right to have a jury determination of the truth of any factual allegations used to increase the defendant's sentence beyond the statutory maximum.

It is unclear whether *Apprendi*'s "fact of a prior conviction" exception applies to prior juvenile court adjudications. As the majority notes, federal and state courts are divided on the issue. (Maj. opn., *ante*, at p. 1021, fn. 10.)

*Apprendi* itself says that the exception to the jury trial right applies only to the "fact of a prior *conviction*." (*Apprendi, supra,* 530 U.S. at p. 490, italics added.) As used in the field of law, the term "conviction" ordinarily does not include juvenile court adjudications. (*People v. Hayes* (1990) 52 Cal.3d 577, 633 [276 Cal.Rptr. 874, 802 P.2d 376] ["Juvenile court adjudications under Welfare and Institutions Code section 602 are not criminal convictions . . . ."].) This is not a matter of semantics: A conviction is obtained in a trial court proceeding at which the adult defendant has the right to a jury trial. By contrast, a juvenile court adjudication results from a proceeding at which the accused juvenile has no right to a jury trial. Therefore, it is the right to a jury trial afforded under the Sixth Amendment to the federal Constitution that is at stake here. To borrow language from *Apprendi,* "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial" (*Apprendi, supra,* 530 U.S. at p. 496) and one in which the defendant lacked that right. (See also *Jones v. United States* (1999) 526 U.S. 227, 249 [143 L.Ed.2d 311, 119 S.Ct. 1215] ["[U]nlike virtually any other consideration used to enlarge the possible penalty for an offense . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, *and jury trial* guarantees." (Italics added.)].) It is thus reasonable to infer that when the high court in *Apprendi* created a "prior conviction" exception to the general right to a trial by jury on any fact supporting a sentence increase beyond the statutory maximum, it did so only for proceedings in which the accused did have that right.

The majority's reasoning here—that prior juvenile court adjudications may constitutionally be used because they have been "reliably adjudicated in proceedings that included . . . every substantial safeguard" *except* the right to jury trial (maj. opn., *ante,* at p. 1021)—misses the point. "The Sixth Amendment jury trial right . . . does not turn on the relative rationality, fairness, or efficiency of potential factfinders." (*Ring v. Arizona* (2002) 536 U.S. 584, 607 [153 L.Ed.2d 556, 122 S.Ct. 2428].) The problem here is not that prior juvenile court adjudications are unreliable. The problem is that the facts underlying a juvenile court adjudication were determined by "a single employee of the State," namely, the judge (*Apprendi, supra,* 530 U.S. at p. 498 (conc. opn. of Scalia, J.)), which is contrary to "the system envisioned by a Constitution that guarantees *trial by jury*" (*ibid.,* italics added).

For the reasons given above, I conclude that the Sixth Amendment's right to a jury trial does not permit a trial court to impose additional punishment that is based on prior juvenile criminal conduct for which there was no right to a jury trial. Thus, I would affirm the judgment of the Court of Appeal, which held that the trial court erred in doubling defendant's sentence on the underlying crime because of his prior juvenile adjudication.

Appellant's petition for a rehearing was denied August 19, 2009, and the opinion was modified to read as printed above. Kennard, J., was of the opinion that the petition should be granted.