Filed 10/10/14  P. v. Reed CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057411 |
| v. | (Super.Ct.No. FSB1202628) |
| SHAWN ROMAN REED et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed with directions.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant, Shawn Roman Reed.

Catherine White, under appointment by the Court of Appeal, for Defendant and Appellant Gregory Daniel Flores.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Anthony Da Silva, and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

Defendants Shawn Roman Reed and Gregory Daniel Flores appeal their criminal convictions for gang-related crimes.

The jury convicted Flores of three criminal counts: false imprisonment, making criminal threats, and street terrorism. (Pen. Code, §§ 236, 422, and 186.22.[1]) The jury also found true the allegations of gang-related conduct on counts 1 and 2. (§ 186.22, subd. (b)(1).) The court sentenced Flores to a total indeterminate prison term of 50 years to life, plus an additional 25 years, including nine consecutive years for the gang enhancements.

The jury convicted Reed of false imprisonment and assault with a deadly weapon. (§§ 236, 245, subd. (a)(1).) The jury also found true the allegations of gang-related conduct. (§ 186.22, subd. (b)(1).) The court sentenced Reed to 11 years eight months in prison, including six consecutive years for the gang enhancements.

On appeal, both defendants challenge the sufficiency of the evidence for the gang allegations. Additionally, Flores challenges his conviction for street terrorism and raises several issues about the application of the Three Strikes Law.

The parties agree the abstract of judgment should be corrected to show Flores was convicted of false imprisonment, not kidnapping, and to correct the enhancements. The parties also agree the case should be remanded for resentencing on Flores's false

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

imprisonment conviction. Otherwise, we reject appellants' contentions and affirm the judgment.

## II

## FACTUAL AND PROCEDURAL BACKGROUND

*A. Trial Evidence*

The testimony of the victim, Ryan Wilhite, and his girlfriend, Jesalyn Price, was disjointed, confusing, and contradictory. The primary factual dispute involves whether Reed and Flores were trying to recover money that Wilhite had borrowed from Richard "Chone" Cabral or whether it was money Wilhite owed to Reed for drugs.

In May 2012, Wilhite borrowed $100 from Cabral. A few days later, when Wilhite and his girlfriend, Jesalyn Price, entered their Redlands home, Cabral and Luis "Joker" Irene were waiting inside. Irene shoved Price outside and Cabral and Irene beat Wilhite until his friend, Curtis, intervened. When Cabral and Irene left, Cabral told Wilhite, "you better pay me my money or it's going to get worse." Because Wilhite was scared of what might happen if he did not repay the loan, he stayed away from home. Wilhite did not immediately report the attack because Wilhite did not want to "mess" with members of the Varrio Redlands street gang.[2]

About May 25, 2012, when Wilhite received his disability paycheck, he paid Cabral the $100 that he originally borrowed. However, Cabral told Wilhite that he owed an additional $100.

---

[2] Defendants stipulated that the Varrio Redlands gang is a criminal street gang.

On May 30, 2012, Cabral and Irene returned a second time, demanded more money, and beat Wilhite almost to unconsciousness. Cabral struck the left side of Wilhite's head and caused a severe cut.

On June 1, 2012, Wilhite contacted police and reported the second attack. Before the police arrived, Wilhite hid in a drainage ditch near his residence.

Price testified that, between June 1 and June 15, 2012, Cabral came by their home every day looking for Wilhite. Reed came by "off and on." Reed was Price's former boyfriend.

Wilhite testified Reed sold him and Price $100 worth of methamphetamine on June 14, 2012, on the condition they pay Reed later. Wilhite pawned a water cooler for $40 on June 15, 2012, and paid Reed that money and owed him $60.

Price testified somewhat differently that Reed gave her $20 worth of methamphetamine on June 15 on the condition Wilhite pay him later. Immediately afterwards, Reed and Flores came to Price and Wilhite's home. Price said Reed knew Wilhite owed $100 to Cabral, which was separate from the $20 Wilhite owed Reed.

Wilhite testified that Flores, "Shy Boy," and Reed, "Yogi," came back to his house on June 15, 2012 and asked for money, some of which was the drug debt owed to Reed. Wilhite later told Redlands Police Officer Betty that defendants had also attempted to collect the money for Cabral. He did not tell the officer that Reed had sold methamphetamine to him and Price.

Reed threatened to "carve" Wilhite and sliced his chest with a razor. Flores and Reed left but then returned between 2:00 and 4:00 a.m. on June 16, 2012. They said they

4

had a flat tire and needed a place to stay. When Wilhite refused, they left again and, at 9:00 a.m., Reed sent a text message from the Stardust Motel asking Wilhite for money. Wilhite called the police, who waited briefly outside Wilhite's house before leaving on another call.

As Wilhite was leaving his home, Flores and Reed drove up and ordered him into their car. Wilhite told the police that Flores had grabbed him by the neck and forced him into the car, striking his head on the doorjamb. At trial, he was equivocal about whether he was forced. Reed demanded the money and Wilhite offered to take them to his uncle's real estate office in San Bernardino. When they arrived at the office, Wilhite went inside and called the police to report he was being kidnapped and he was going to try to return with defendants to a Redlands Starbucks. He took a drill from the office to offer as collateral but defendants wanted money. At the Starbucks, Wilhite made contact with the police who arrested defendants.

Officer Betty testified that Wilhite's statements included the information that Reed and Flores had arrived at Wilhite's home on June 15. Wilhite did not say exactly what defendants said but he did tell Officer Betty that Reed demanded that Wilhite pay the debt he owed to Cabral. Flores warned he would beat up Wilhite and Price if Wilhite did not pay.

Redlands Police Officer, Kyle Alexander, testified as the prosecutor's gang expert. He had served six years in the police department and on the county's gang suppression team for the past three years. He had received more than 140 hours of gang-related training. Officer Alexander testified about gang culture and how gang members commit

5

crimes to intimidate other gangs and the surrounding community so that the gang will be "respected." He also testified about the Varrio Redlands street gang, its territory, and the use of street monikers.

Officer Alexander talked to Wilhite on June 1, 2012, after Wilhite had been hiding in a ditch. Wilhite was petrified and scared. He told the officers that Cabral or Cabral's people were looking for him. He did not say that he owed Reed money for drugs.

One week before testifying in this trial, Wilhite encountered Irene on the street. Irene warned Wilhite not to testify or "it's going to be all bad." The day before Wilhite testified, he encountered Reed on the jail transport bus. Reed told Wilhite to claim that he had been "high" and did not know what he was doing. Otherwise, "it's going to be all bad." Wilhite interpreted Reed's statement as a threat.

B. *Defendants' Arguments*

Defendants did not testify.

Defense counsel for Flores argued that Wilhite and Price were not credible witnesses. Cabral was not arrested or charged with crimes. Counsel argued that Wilhite actually owed money to Reed who sold him methamphetamine and that Wilhite did not owe money to Cabral. Counsel admitted that Flores had some connection to the Varrio Redlands street gang. However, Flores did not kidnap Wilhite because Flores drove Wilhite where he wanted to go—his uncle's office and the Redlands Starbucks. Counsel also argued Flores's conditional statement to Wilhite did not threaten anyone with immediate harm. No evidence was presented that Cabral had any connection with Flores and Reed. The prosecutor failed to prove that Flores committed any crime for the benefit

6

of a criminal street gang. Counsel argued that none of the charges against Flores had been proven beyond a reasonable doubt.

Defense counsel for Reed argued that Wilhite's trial testimony—that Wilhite was beaten for failing to pay Reed for methamphetamine—was more persuasive than Wilhite's pretrial, unsworn statements to police that he was beaten and hunted by Reed and Flores under orders by Varrio Redlands street gang leader Cabral. Counsel argued that Wilhite's report to officers that Reed demanded, "where's my money," should be interpreted as Reed demanding money for the methamphetamine not a demand for money Wilhite owed to Cabral. Reed and Flores were not collecting money on behalf of the Varrio Redlands street gang leader Cabral. Finally, counsel argued no kidnapping occurred because Wilhite voluntarily accompanied Reed and Flores and Wilhite fabricated the assault.

## III

## GANG ENHANCEMENTS

Defendants argue that insufficient evidence supports the jury's true findings that Reed committed false imprisonment (count 4) and assault with a deadly weapon (count 5) and Flores committed false imprisonment (count 1) and criminal threat (count 2), for the purpose of benefiting a criminal street gang within the meaning of section 186.22, subdivision (b). Reed contends the evidence showed only that Reed was seeking payment from Wilhite for drugs and no evidence proved that Reed was a gang member, acting as an intermediary between Wilhite and the Varrio Redlands street gang. Flores

7

admits he may have been a member of the Varrio Redlands gang but he contends he was a disinterested chauffeur when Reed asked him to drive Wilhite somewhere to get money.

We conclude that sufficient evidence proved defendants attacked Wilhite and forced him into their car so Wilhite could get money to pay Cabral, a Varrio Redlands gang member. The jury resolved the disputed facts in favor of the prosecution and found that Reed and Flores had committed their respective crimes to benefit the Varrio Redlands gang.

*A. Gang evidence*

As already noted, defendants stipulated that the Varrio Redlands gang is a criminal street gang. The gang expert, Officer Alexander, testified to having many years of gang-related training and experience. He explained how street gangs operate by committing crimes to intimidate the surrounding community and other gangs and to protect their territory. The gangs are hierarchical with leaders and street soldiers who act on orders. Alexander investigated crimes committed by Varrio Redlands. He qualified as an expert witness about the gang, whose primary activities are selling methamphetamine, and committing robbery, forgery, burglary, car theft, kidnapping, carjacking, stabbing, shooting, and murder. Alexander offered an interpretation of Flores and Irene's gang tattoos on his chest.

The gang's criminal history was extensive. In February 2008, a gang member, Oscar Correa, shot at a group of people at a party because two rival gang members were present. Correa pleaded guilty to committing assault with a deadly weapon. In May 2009, another gang member, Jose Lara, was arrested for possession of narcotics and

8

marijuana for sale and for unlawfully possessing a firearm. Lara's home was used as a gang hideout. A third gang member, Mark Manzano, was convicted of committing a carjacking in July 2001. Another gang member, Salman Villarea, was arrested in October 2008 and April 2012, and convicted for being a felon in possession of a gun.

Officer Alexander knew Cabral personally. In July 2003, Cabral was arrested and convicted for stealing a vehicle and possessing methamphetamine for sale. In August 2006, Cabral was arrested and convicted for evading a police officer. Cabral is a high-ranking Varrio Redlands gang member, a "shot caller", and a "key holder," an acting chief of the gang. Cabral directed Varrio Redlands's criminal activities, including punishing those gang members who did not follow his orders.

Officer Alexander also testified that Flores and three Varrio Redlands gang members were arrested and convicted in February 2003, after shots were fired at Redlands police officers. Flores was convicted of assault with a firearm, and possession of a handgun. Flores also admitted that he committed those crimes to benefit a criminal street gang. Flores was convicted in June 2008 of possessing narcotics for sale and Flores admitted that he committed that crime for the benefit of a criminal street gang. When Redlands police officers contacted Flores in June 2012, Flores told them that he was a Varrio Redlands gang member. Between 2003 and 2012, Flores admitted on multiple occasions that he was a gang member. In the eight field contacts and four jail classification contacts that Flores had with sheriff's deputies, Flores admitted being a Varrio Redlands gang member. Other Varrio Redlands gang members, including his half-brother, claimed Flores as being a fellow gang member.

9

Officer Alexander opined that Flores is an active member of the Varrio Redlands criminal street gang, based on Flores's prior crimes, numerous contacts with and admissions to law enforcement, documented contacts with other Varrio Redlands gang members, and his gang tattoos.

Officer Alexander also answered a hypothetical question about gang involvement based on the facts of this case: a person not repaying a $100 loan from a gang member; the gang member adding a "tax" for late repayment; two gang members beating up the borrower; a third gang member and a cohort threatening the borrower and using a metal object to slash the borrower's chest; and the third gang member and cohort forcibly driving the borrower to different locations to collect money owed to the first gang member. Based on these hypothetical facts, Alexander opined that the third gang member and cohort acted for the benefit of the criminal street gang because it is not uncommon for an older gangster to order a younger gang member to collect a debt. The officer also stated that, because a nongang member assists a gang member to commit a crime does not lessen the benefit to the gang. If Irene, a gang member, and Reed, a nongang member, threatened Wilhite about testifying, that conduct was a form of intimidation that benefited a criminal street gang.

Additionally, Wilhite, with Price present during the interview, told the police that Reed and Flores had demanded on June 15, 2012, that Wilhite pay the money that he owed to Cabral. Wilhite said Reed had made the actual demand and Flores said he would beat up Wilhite and Price if Wilhite did not pay. Wilhite also testified that, when Reed and Flores arrived at his home at night on June 15, Wilhite understood they wanted

10

Cabral's money and it was not because Wilhite owed money to Reed for drugs. Price also testified that Reed knew that Wilhite owed money to Cabral, and that Wilhite's debt to Cabral was separate from the money that Wilhite owed Reed.

## B. *Sufficiency of Evidence*

On appeal, we apply the substantial evidence standard of review, viewing the evidence in the light most favorable to the judgment. Substantial evidence is, evidence that is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Maury* (2003) 30 Cal.4th 342, 396.) A reviewing court does not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.) Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Section 186.22, subdivision (b)(1), prescribes a sentence enhancement for crimes "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . . " (§ 186.22, subd. (b); *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1358.) Expert testimony may prove the necessary elements. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1047-1048.) However, the record must provide additional evidentiary support—other than the defendant's record of offenses and past gang activities or personal affiliations—for a finding that the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang. (*People v.*

11

*Ochoa, supra*, 179 Cal.App.4th at p. 657.) Here, our independent review concludes sufficient evidence supported the jury's true finding that Reed and Flores each acted to benefit the Varrio Redlands gang.

Both defendants committed felonies for the benefit of, at the direction of, or in association with a criminal street gang. (*In re Daniel C., supra,* 195 Cal.App.4th at p. 1358.) Flores committed false imprisonment of Wilhite and made criminal threats to Wilhite for the benefit of the Varrio Redlands gang. The expert witness testimony and Wilhite's statements to the police permitted the jury reasonably to conclude that Flores committed the felonies of false imprisonment and criminal threat for the benefit of, at the direction of, or in association with the Varrio Redlands criminal street gang.

Officer Alexander admitted that he did not have any background information about Reed being a member of the Varrio Redlands gang. However, Reed tried to prevent Wilhite from testifying by threatening him before trial. Officer Alexander testified that Reed acted to benefit a criminal street gang because he "was willing to act as a gang member by intimidating somebody and threatening somebody, a witness, in hopes . . . to instill fear in the witness to prevent him" from testifying against the gang or a gang member. Officer Alexander's analysis of the hypothetical question—that included the nongang cohort using a metal object to cut a design in the chest of a person who owed money to a gang member—determined that the nongang cohort's action also benefited the criminal street gang because it was undertaken to satisfy a debt owed to a high ranking gang member.

Additionally, Wilhite testified that, on June 15, Reed, with Flores, demanded that Wilhite give Reed the money owed to Cabral. Wilhite also testified inconsistently that he was confused about whether Reed wanted the money for Cabral or for himself. The jury could reasonably conclude that Reed's demand for Cabral's money was for the benefit of the Varrio Redlands gang and was not related to the money owed by Wilhite and Price to Reed.

Sufficient evidence also supported the jury's findings that Reed and Flores committed the charged crimes with the specific intent to promote, further, or assist the criminal conduct of Varrio Redland's gang members. Flores, an admitted gang member, accompanied Reed to collect on Wilhite's debt to Cabral. Subsequently, both engaged in false imprisonment and other criminal conduct to execute their mission with the specific intent to promote the street gang. Based on the testimony of Officer Alexander, Wilhite, and Price, sufficient evidence supported the jury's true findings that defendants committed their respective crimes for the benefit of a criminal street gang. (§ 186.22, subd. (b).)

IV

STREET TERRORISM

In a similar argument, Flores argues his conviction for committing street terrorism (§ 186.22, subd. (a)) is not supported by sufficient evidence that he actively promoted or participated in a criminal street gang. We conclude substantial evidence established that Flores knew, promoted, and actively participated in the Varrio Redlands gang's principal

13

criminal activities.  The gang expert's testimony on this point was amply corroborated by Wilhite and Price's testimony.

Street terrorism has three elements:  1) the defendant's active participation in a gang that is more than nominal or passive; 2) the defendant's knowledge that the gang members engage in or have engaged in a pattern of criminal gang activity; and 3) the defendant "'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.'"  (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)

Officer Alexander testified that the primary criminal activities of the Varrio Redlands gang is selling methamphetamine, and committing robbery, forgery, burglary, car theft, kidnapping, carjacking, stabbing, shooting, and murder.  Flores admitted to being a gang member and his gang-related criminal history was continuous from 2003 until 2012.  He committed multiple offenses involving firearms and drugs while associating with other Varrio Redlands gang members and sporting gang tattoos.

In this instance, Flores joined forces with Reed to collect Cabral's money from Wilhite.  While Reed used a razor to cut Wilhite's chest, Flores blocked Wilhite from leaving.[3]  Flores threatened to beat Wilhite and Price if Wilhite did not repay Cabral. Flores drove the car in which Wilhite was restrained.  Based on these facts, the jury could readily find that Flores participated actively in extorting money from Wilhite.  On that basis, Flores willfully promoted, furthered, or assisted in a felonious criminal gang activity.  (*People v. Lamas, supra*, 42 Cal.4th at p. 523.)  Viewed in the light most

---

[3]  Reed conducted himself like a gang member and on behalf of and to benefit a criminal street gang.  (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1132.)

14

favorable to the judgment, the record contains sufficient evidence to sustain the jury's findings that Flores's crimes were gang-related for purposes of section 186.22, subdivision (a).

V

FLORES'S JUVENILE OFFENSE

Section 667, subdivision (d)(3)(A)—the use of a juvenile adjudication for the purpose of imposing a Three Strikes sentence—requires a showing that Flores was 16 years old or older when he committed second degree robbery as a juvenile. Contrary to Flores's claim, sufficient evidence was presented in the bifurcated court trial that Flores was 17 years old when he committed the robbery that was adjudicated by the juvenile court in 1998.[4]

The prosecutor specially alleged Flores was adjudicated by a juvenile court to have committed serious or violent felony crimes in three cases: robbery (§ 211) about which the juvenile court made a true finding in 1998, in superior court case No. YA80266; and two separate crimes (§ 186.22) for which he was convicted on October 23, 2003, and July 2, 2009, in superior court case Nos. FRE05942 and FSB902225, respectively.

At the bifurcated court trial, the court reviewed records of Flores's prior crimes. The records of the adult offenses in 2003 and 2009 included the information that Flores was born on October 14, 1980, and his convictions were "strike" convictions. Exhibit 48

---

[4] According to the probation report, Flores was born on October 14, 1980.

15

pertains to the true finding by the Superior Court of Flores' second degree robbery in the juvenile case, number YA80266, in 1998. The court noted that Flores was born on October 14, 1980; it found true that Flores was 17 years old when the juvenile court rendered its disposition in 1998; and the true finding was a "strike" conviction.

At the close of the bifurcated hearing, Flores's defense counsel objected to the court considering Flores's 2003 street terrorism conviction in case No. FRE05942 as a "strike" conviction and reasoned that conviction for street terrorism was not a "strike" conviction on October 23, 2003. Later court decisions held that convictions for street terrorism were retroactively considered as "strike" convictions.

Flores did not object to the trial court's true finding that he was at least 17 years old when he committed the second degree robbery. He has forfeited this challenge for appellate review. Even if Flores had timely objected to the trial court finding concerning his 1998 second degree robbery conviction, the court could have continued the proceedings for clarification. However, failure to make a timely objection forfeits the issue. (See *People v. Simon* (2001) 25 Cal.4th 1082, 1103.)

Even if reviewable on the merits, the prosecutor's evidence established that Flores was 16 years or older when he committed the underlying second degree robbery. Flores turned 16 on October 14, 1996. In 1998, he was 17 years old until he turned 18 in October 1998. Sufficient evidence supported the trial court's true finding that Flores was over 16 years old when he committed the underlying robbery, which was a "strike" for purposes of imposing a Three Strikes sentence.

16

Additionally, we reject the contention that the trial court improperly sentenced Flores because it wrongly relied on his 1998 juvenile adjudication as a basis for finding him eligible to be sentenced under the Three Strikes law. The California Supreme Court's decision in *People v. Nguyen* (2009) 46 Cal.4th 1007, 1028, holds that "the absence of a constitutional or statutory right to jury trial under the juvenile law does not, under *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435]], preclude the use of a prior juvenile adjudication of criminal misconduct to enhance the maximum sentence for a subsequent adult felony offense by the same person." The *Nguyen* court held that a prior juvenile adjudication could constitutionally be used as a strike under California's Three Strikes law in subsequent adult proceedings even though juveniles are not entitled to a jury trial. (*Nguyen,* at p. 1028.) The Nguyen court reasoned that the use of reliably obtained juvenile adjudications to enhance later adult criminal proceedings does not offend an adult defendant's constitutional right to a jury trial in adult criminal proceedings. (*Id*. at p. 1021.) If an accused adult is accorded his right to a jury trial in the adult proceeding as to all facts that influence the maximum permissible sentence, no reason appears why a constitutionally-reliable prior adjudication of criminality, obtained pursuant to all procedural guarantees—specifically including the right to proof beyond a reasonable doubt—should not also be for that sentencing purposes. (*Id.* at p. 1023.) The *Nguyen* court concluded "the Fifth, Sixth, and Fourteenth Amendments, as construed in *Apprendi*, do not preclude the sentencing-enhancing use, against an adult felon, of a prior valid, fair, and reliable adjudication that the defendant, while a minor, previously engaged in felony misconduct, where the juvenile proceeding

17

included all the constitutional protections applicable to such matters, even though these protections do not include the right to jury trial." (*Id.* at p. 1019.) We are bound by the *Nguyen* holding. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 454-455.) Furthermore, Flores's 2003 and 2009 felony convictions make him subject to being sentenced under the Three Strikes law. (§§ 667, subd. (e)(2)(A), 1192.7, subd. (c)(28).)

The 1998 juvenile adjudication for robbery was properly relied upon by the trial court to find Flores eligible for sentencing under the Three Strikes law. The true findings that he was convicted of street terrorism in 2003 and 2009 also rendered him subject to being sentenced under the Three Strikes law.

VI

FLORES'S CONVICTION FOR FALSE IMPRISONMENT

On count 1, the jury acquitted Flores of kidnapping, convicting him instead on the lesser included offense of false imprisonment (§ 236). The jury further found the gang enhancement (§ 186.22, subd. (b)) allegation true as to this count.

Under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) as it existed before Proposition 36,[5] a defendant convicted of two prior serious or violent felonies would be subject to a sentence of 25 years to life upon conviction of a third felony. Under the Reform Act, however, a defendant convicted of two prior serious or violent felonies is subject to the 25-year-to-life sentence only if the third felony is itself a serious or violent felony. If the third felony is not a serious or violent felony, the court will sentence

_____

[5] On November 6, 2012, voters approved Proposition 36, the Three Strikes Reform Act of 2012 (the Reform Act).

18

defendant as though the defendant had only one prior serious or violent felony conviction, and is therefore a second-strike, rather than a third-strike, offender.

Here, the trial court found that false imprisonment in count 1 was a "serious" felony within the meaning of the revised Three Strikes law because of the gang enhancement. Finding that the false imprisonment was a serious felony, the court imposed an additional five-year term under section 667, subdivision (a), and an additional four-year term under section 186.22, subdivision (b)(1).

However, false imprisonment is not a serious felony. While section 1192.7, subdivision (c)(28), makes "any felony offense, which would also constitute a felony violation of Section 186.22" a serious felony, the California Supreme Court has explained this provision is only applicable when the defendant reoffends: "Thus, section 186.22(b)(1)(A), (B), and (C) speaks to an event that occurs in the current proceeding. Section 1192.7, subdivision (c), on the other hand, comes into play only if the defendant reoffends, at which time any *prior* felony that is gang related is deemed a serious felony. Thus, any felony that is gang related is not treated as a serious felony in the current proceeding, giving effect to section 186.22(b)(1)(A). . . . [¶] [W]hile it is proper to define any felony committed for the benefit of a criminal street gang as a serious felony under section 1192.7(c)(28), it is improper to use the *same* gang-related conduct *again* to obtain an additional five-year sentence under section 186.22(b)(1)(B)." (*People v. Briceno* (2004) 34 Cal.4th 451, 465.) Therefore, the false imprisonment count was not as a serious felony for sentencing. The court should have calculated the term of the

19

enhancement based on section 186.22, subdivision (b)(1)(A) (one-third of the middle term of three years, or one year).

Furthermore, the abstract of judgment should be corrected to show that Flores was convicted of false imprisonment, not kidnapping, and that the court imposed the single one-year term under section 667.5; the remaining three terms were five-year terms imposed pursuant to section 667, subdivision (a).

VII

DISPOSITION

We remand so that the trial court may correct the abstract of judgment to reflect that Flores was convicted of false imprisonment not kidnapping and that the court imposed a consecutive one-year sentence enhancement pursuant to section 667.5 and three consecutive five-year sentence enhancements pursuant to section 667. Additionally, the court should resentence Flores on the false imprisonment conviction, according to the Three Strikes Reform Act.

Otherwise, we affirm the judgment against Flores and Reed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

KING
J.

20