# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

TROY LEE SHAW,
Defendant and Appellant.

S286453

Third Appellate District
C098821

Placer County Superior Court
62176716Z

December 15, 2025

Justice Kruger authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Groban, Evans, and Jenkins[*] concurred.

Justice Groban filed a concurring opinion, in which Justices Liu and Evans concurred.

---

[*] Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. SHAW

S286453

Opinion of the Court by Kruger, J.

The Three Strikes law increases sentences for felony defendants who have previously been convicted of one or more "serious or violent" felonies, commonly referred to as "strikes." (See Pen. Code, §§ 667, subds. (b)–(i), 1170.12.)   This case concerns how to count the number of strikes when a single criminal act has resulted in multiple prior felony convictions.  In *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*), we held that two prior convictions arising out of a single act against a single victim may not be treated as two strikes for purposes of Three Strikes sentencing.  In this case, we address a closely related question: May a single act that harms *two* victims be treated as two strikes for purposes of Three Strikes sentencing? Again, the answer is no.

**I.**

In December 2020, officers found defendant Troy Lee Shaw unconscious behind the wheel of a car that was stopped in the middle of the road with its engine running.  Though Shaw declined to complete any field sobriety tests, he admitted he had taken methamphetamine earlier that day.  Officers observed that his gait was unsteady, his eyes were droopy, and his pupils were constricted.  They searched Shaw and his car, finding two baggies of methamphetamine, drug paraphernalia, and several bags of marijuana.  A blood test returned positive results for amphetamine and methamphetamine.

Shaw was charged with felony driving under the influence of a drug, possession of a controlled substance, possession of drug paraphernalia, and possession of more than 28.5 grams of marijuana. (Veh. Code, § 23152, subd. (f); Health & Saf. Code, §§ 11377, subd. (a), 11364, subd. (a), 11357, subd. (b)(2).) A jury found him guilty.

For purposes of sentencing, Shaw admitted that he had suffered two prior convictions for gross vehicular manslaughter while intoxicated. Both convictions stemmed from a 2002 incident in which Shaw drove under the influence, ran a red light, and struck a car with three occupants, killing two of them: a 21-year-old mother and her 23-month-old son. These two prior homicide convictions made Shaw eligible for a third-strike, indeterminate term of 25 years to life. (Pen. Code, § 667, subd. (e)(2)(A), (C)(iv)(IV).)

Shaw moved to dismiss one of the two prior strikes in furtherance of justice. (See Pen. Code, § 1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).) Relying on this court's decision in *Vargas*, *supra*, 59 Cal.4th 635, he argued that dismissal was required because both convictions arose from a single criminal act. The trial court denied Shaw's motion. The court imposed a third-strike sentence of 25 years to life on the driving under the influence charge and concurrent six-month sentences for the three possession offenses.

The Court of Appeal upheld Shaw's third-strike sentence in an unpublished opinion. Relying on *People v. Rusconi* (2015) 236 Cal.App.4th 273 (*Rusconi*), the court held that the trial court had not abused its discretion in refusing to dismiss one of the strikes because in this case, unlike in *Vargas*, Shaw's prior criminal act had harmed two victims and not just one. Quoting

2

*Rusconi*, the court explained that the voters and legislators who passed the Three Strikes law could not have intended for "violent offenders who injure multiple victims" to be "treated like offenders who only injure one individual," given the greater culpability of "perpetrators of multivictim violence." (*Rusconi*, at pp. 280–281.)

We granted Shaw's petition for review and now reverse.

## II.

In 1994, the Legislature and the electorate enacted nearly identical recidivist sentencing legislation, commonly known as the Three Strikes law. (Pen. Code, §§ 667, subdivisions (b)–(i) (section 667), 1170.12.) The Three Strikes law is an alternative sentencing scheme that prescribes longer sentences for felony convictions when the defendant has previously been convicted of one or more felony offenses designated as serious or violent — otherwise known as "strikes." (See generally *People v. Conley* (2016) 63 Cal.4th 646, 652–654 (*Conley*).)

The length of the increased sentence generally depends on how many prior strikes the defendant has incurred. As the Three Strikes law was first enacted, defendants who had suffered one prior strike conviction were subject to a term of imprisonment that was twice what it otherwise would have been for their current felony offense, while defendants who had suffered two or more prior strike convictions were subject to an indeterminate life term in prison, with no fewer than 25 years before parole eligibility. (See Assem. Bill No. 971 (1993–1994 Reg. Sess.); Stats. 1994, ch. 12.) Voters later enacted the Three Strikes Reform Act of 2012, which narrowed the circumstances in which courts may impose a third-strike sentence but maintained the same distinction between second-strike and

third-strike sentencing. (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012).)

Under current law, defendants with two or more prior strikes are subject to a third-strike, indeterminate life sentence only under certain circumstances, including if their *current* offense is: serious or violent; a controlled substance charge involving large quantities; one of various enumerated sex offenses; or one in which the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury. (§ 667, subd. (e)(2)(A), (C).) Defendants are also eligible for a third-strike, indeterminate life sentence if they were *previously* convicted of certain enumerated offenses, including those involving sexual violence, child sexual abuse, homicide or attempted homicide, solicitation to commit murder, assault with a machine gun on a peace officer or firefighter, possession of a weapon of mass destruction, or any serious or violent felony punishable by life imprisonment or death. (§ 1170.12, subd. (c)(2)(C)(iv)(I)–(VIII).) (See generally *Conley*, *supra*, 63 Cal.4th at pp. 652–653.)

Not long after the Three Strikes law took effect, courts began to face questions about how strikes should be counted when a defendant had multiple convictions stemming from related underlying acts. We addressed such questions in a trio of cases, beginning with *People v. Fuhrman* (1997) 16 Cal.4th 930 (*Fuhrman*).

In *Fuhrman*, the defendant had suffered multiple convictions stemming from a series of incidents we described as follows: "[D]efendant, while driving a stolen car, collided with another vehicle. [Fn. omitted.] When the victim of the collision expressed her intent to call the police, defendant brandished a

handgun. Defendant then forced his way at gunpoint into a truck that had stopped because of the collision. Defendant ordered the driver of the truck to take him from the scene. The driver thereafter drove approximately two-tenths of a mile, when defendant told her to stop and ordered her from the truck." (*Fuhrman*, *supra*, 16 Cal.4th at p. 935.)

The defendant in *Fuhrman* argued that the convictions stemming from this series of events should not be counted as multiple strikes because the charges had been brought and tried together rather than separately. We rejected the argument as contrary to the plain language of the Three Strikes law. Section 667, subdivision (d) provides, as relevant, that "[n]otwithstanding any other law," for Three Strikes purposes "a prior conviction of a serious or violent felony shall be defined" to include "(1) An offense defined in subdivision (c) of Section 667.5 as a violent felony or an offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state." This language treats a "prior conviction" for a serious or violent felony as a strike, without further qualification. (See *Fuhrman*, *supra*, 16 Cal.4th at pp. 938–940 [contrasting the language of the Three Strikes law with the language of an unrelated sentence enhancement statute that does contain a "brought and tried separately" qualification].) Thus, we held, "a prior qualifying conviction need not have been brought and tried separately from another qualifying conviction in order to be counted as a separate strike." (*Id.* at p. 933.)

*Fuhrman* left open, however, whether the statute permits "separate strikes to be imposed for offenses that in a prior proceeding were determined to have been committed as part of an indivisible transaction, and as to which it was concluded that imposition of separate punishment for each offense would

constitute multiple punishment proscribed by [Penal Code] section 654." (*Fuhrman, supra,* 16 Cal.4th at p. 941.) We answered that question in *People v. Benson* (1998) 18 Cal.4th 24 (*Benson*). There, the defendant had suffered two prior convictions for residential burglary and assault with intent to commit murder, which arose from an incident in which he unlawfully entered his neighbor's apartment and then stabbed her. The sentence for the assault conviction was stayed under Penal Code, section 654, which, as we have interpreted it, "precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294; see Pen. Code, § 654, subd. (a) ["An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision"].) The defendant in *Benson* argued that the stay of sentence precluded counting the assault conviction as a strike. Again relying on the plain language of the Three Strikes law, this court rejected the argument. The statute, we observed, refers to " 'a prior conviction of a felony,' " and, furthermore, explicitly instructs that " '[t]he stay of execution of sentence' " does not " 'affect the determination that a prior conviction is a prior felony.' " (*Benson*, at p. 28, italics omitted, quoting Pen. Code, § 1170.12, subd. (b)(1)(B); see *Benson*, at p. 31.) We thus held that crimes that were "sustained in one action and ar[ose] out of the same set of facts" qualify as separate strikes within the meaning of the statute, even if the crimes were so closely connected that they could not be separately punished at the time they were adjudicated. (*Benson*, at p. 26.)

The defendant in *Benson* argued that this reading of the text was untenable because counting every single conviction as

6

a strike, no matter how closely related the underlying facts, would lead to " 'dramatic and harsh results.' " (*Benson*, *supra*, 18 Cal.4th at p. 35.) In response to this concern, we pointed to *Romero*, *supra*, 13 Cal.4th 497, which had held that a sentencing court may, on its own motion, dismiss a prior strike in the interests of justice under Penal Code section 1385. (*Benson*, at pp. 35–36.) In a footnote, we expanded on the point: "Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which two prior felony convictions are so closely connected — for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct — that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (*Id.* at p. 36, fn. 8.)

The third case in the series, *Vargas*, is the focus of our inquiry in this case. There we considered the question reserved in the *Benson* footnote: How should multiple convictions be treated when they stem not just from a single criminal proceeding (*Fuhrman*) or a single indivisible course of conduct (*Benson*), but from a single act?

The defendant in *Vargas* was convicted of various felony offenses, with sustained allegations that she had suffered two prior strikes based on convictions for robbery and carjacking. (*Vargas*, *supra*, 59 Cal.4th at p. 639.) Both convictions were "based on the same act of taking the victim's car by force." (*Id.* at p. 640.) We granted review to decide "whether the trial court should have dismissed one of defendant's two prior felony convictions, alleged as strikes under the Three Strikes law,

where both convictions were based on the same act." (*Ibid.*) We concluded the answer was yes: "[W]hen faced with two prior strike convictions based on the same act," the trial court was "*required* to dismiss one of them." (*Ibid.*; see *id.* at p. 649.)

We took as a given that the text of the Three Strikes law treats every prior conviction of a serious or violent felony as a separate strike. But as we had noted in *Benson*, this is not the end of the story: Under *Romero*, a trial court may dismiss a strike allegation or finding in the interests of justice — and, in certain exceptional situations, may be required to do so.

Our analysis thus began with a review of the standards governing the adjudication of *Romero* motions. In *People v. Williams* (1998) 17 Cal.4th 148, we instructed that, when considering whether to dismiss a strike under *Romero*, "the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, at p. 161.)

Later, in *People v. Carmony* (2004) 33 Cal.4th 367, 378, we considered the scope of a trial court's discretion *not* to dismiss a strike. We there explained that "[b]ecause the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no

reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*; see also *Vargas*, *supra*, 59 Cal.4th at pp. 641–642.)

The question in *Vargas*, then, was whether "the facts — . . . that defendant's two strikes were based on the same act — demonstrate that no reasonable person would disagree that defendant fell outside the spirit of the Three Strikes law." (*Vargas*, *supra*, 59 Cal.4th at p. 642.) To answer this question, we considered the intent reflected in the ballot materials accompanying the passage of the Three Strikes initiative. The ballot argument in favor of the measure read: "Here's how it works: [¶] Strike One: One serious/violent felony serves as a first strike toward a stiffer prison term. [¶] Strike Two: A second felony conviction, with one prior serious/violent felony, DOUBLES the base sentence for the conviction. Any additional enhancements under existing law, including those for prior convictions, are then added. . . . [¶] Strike Three: A third felony conviction, with two serious/violent prior felonies, TRIPLES the base sentence or imposes 25 years to life, whichever is greater." (Ballot Pamp., Gen. Elec. (Nov. 8, 1994) argument in favor of Prop. 184, p. 36; see generally *Romero*, *supra*, 13 Cal.4th at p. 528 [ballot arguments of Three Strikes initiative is evidence of voters' intent].)

"Given this information," we said, "the voting public would reasonably have understood the 'Three Strikes' baseball metaphor to mean that a person would have three chances — three swings of the bat, if you will — before the harshest penalty could be imposed. The public also would have understood that no one can be called for two strikes on just one swing. Permitting the trial court . . . to treat [Vargas's] 1999 robbery

and carjacking convictions as separate strikes — despite the fact [that] they were based on a single criminal act — would do just that, and thus contravene the voter's clear understanding of how the Three Strikes law was intended to work." (*Vargas, supra*, 59 Cal.4th at p. 646.) We discerned "no different intent" regarding the version of the Three Strikes law enacted by the Legislature. (*Ibid.*) As such, no reasonable person could disagree that counting both convictions as strikes would contravene "the spirit of the Three Strikes law," requiring dismissal of at least one of the strikes under *Romero.* (*Id.* at p. 647; see *id.* at p. 642.)

## III.

The year after we decided *Vargas*, the Court of Appeal considered a request for relief from a third strike sentence brought by a defendant with two prior convictions for vehicular manslaughter, based on a single incident in which he drove while intoxicated and crashed into two victims. (*Rusconi, supra*, 236 Cal.App.4th at p. 276.) The defendant argued that relief was required under *Vargas* because both strikes stemmed from a single act. The Court of Appeal disagreed. It held that *Vargas*'s dismissal requirement applies only when a defendant's single act against a single victim gave rise to multiple felony convictions — not when a single act that harmed multiple victims gave rise to multiple convictions. The Court of Appeal in this case relied on *Rusconi* to uphold Shaw's third-strike, indeterminate life sentence under materially identical circumstances.

The question now before us is whether the Court of Appeal correctly identified *Vargas*'s reach. Does *Vargas* apply only in the circumstances there presented, in which the defendant had

suffered multiple convictions stemming from a single act against a single victim? Or does *Vargas* also apply where, as here, the same act caused harm to multiple victims?

The reasoning of *Vargas* strongly suggests the answer to the question. Although we noted at the outset that the underlying facts concerned "two prior convictions arising out of a single act against a single victim" (*Vargas*, *supra*, 59 Cal.4th at p. 637), our opinion ascribed no particular significance to the single-victim aspect of the case. We instead repeatedly described the issue before us as "whether the trial court should have dismissed one of defendant's two prior felony convictions, alleged as strikes under the Three Strikes law, *where both convictions were based on the same act*." (*Id.* at p. 640, italics added; accord, *id.* at p. 642 ["based on the same act"]; *id.* at p. 645 ["based on her commission of the same act"].) In answering yes, we explained that when a defendant's "two strikes *[are] based on the same act* . . . no reasonable person would disagree that [the] defendant fell outside the spirit of the Three Strikes law" — specifically, its provisions prescribing indeterminate life sentences for persons with two prior strikes. (*Id.* at p. 642, italics added; see *id.* at p. 649.) This is because, "[u]nlike those rightfully subject to a third strike sentence," a person who has "*committed but one prior qualifying act*" has "had only two swings of the bat." (*Id.* at p. 647, italics added.)

Although the teachings of *Vargas* would appear to apply equally to any case in which a court is considering a third-strike sentence for a person who has "committed but one prior qualifying act" (*Vargas*, *supra*, 59 Cal.4th at p. 647), the Attorney General argues that *Vargas* should be cabined to its single-victim facts. According to the Attorney General, that is because when a prior criminal act has harmed multiple victims,

11

not "every reasonable person" would agree that multiple-strike sentencing is outside the spirit of the Three Strikes law.

To support the argument, the Attorney General points to the law governing the charging and punishment of violent acts that harm multiple victims. Under that law, it is well-established that " '[a] defendant may properly be convicted of multiple counts for multiple victims of a single criminal act . . . where the act prohibited by the statute is centrally an "act of violence against the person." ' " (*People v. McFarland* (1989) 47 Cal.3d 798, 803, italics omitted.) So, too, may a defendant be separately punished with respect to each victim. (*Id.* at pp. 803–804; see also, e.g., *Neal v. State* (1960) 55 Cal.2d 11, 20 [multiple convictions may be separately punished when they arise from "an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons"]; accord, e.g., *People v. Oates* (2004) 32 Cal.4th 1048, 1063.)

The Attorney General argues that the voters and legislators who enacted the Three Strikes law must be presumed to have been aware that the law generally treats the perpetrators of multivictim violence as more culpable and thus punishes them more harshly. As such, they should be presumed to have understood that a single criminal act with more than one victim might yield more than one strike for Three Strikes purposes. Here the Attorney General invokes the reasoning of *Rusconi*: "It is not reasonable to believe the authors of the three strikes law . . . intended that . . . violent offenders who injure multiple victims should be treated like offenders who only injure one individual. Such a dramatic and lenient departure from the severe punishment the law had already recognized the perpetrators of multivictim violence deserve would be at direct

odds with the overall purpose of the three strikes law" to
" 'require[] severe punishment' " in cases of recidivism to combat
" 'the perception [] that serious and violent criminals who
committed multiple crimes were allowed to escape their just
desserts [*sic*].' " (*Rusconi, supra,* 236 Cal.App.4th at pp. 280–
281.)

This argument for limiting *Vargas* is not persuasive.
*Vargas,* too, addressed a situation in which multiple convictions
were imposed for the same underlying criminal act; we there
concluded that multiple convictions alone were not sufficient to
support third strike sentencing. (*Vargas, supra,* 59 Cal.4th at
p. 646.) It is true, as the Attorney General notes, that *Vargas*
did not squarely address a situation in which multiple
*punishments* are authorized for the same underlying act. On
the contrary, as our opinion noted, the Penal Code does not
permit multiple punishments for carjacking and robbery
convictions based on the forcible theft of the same car. (*Id.* at
p. 647.) But we ascribed little significance to the point,
characterizing it as "further evidence" of relevant legislative
intent, but "not dispositive." (*Id.* at pp. 648–649.) Rather, as we
have explained, the dispositive point in *Vargas* was that both of
Vargas's convictions stemmed from a single act. (*Id.* at pp. 640,
648–649.) The same is true here.

But more fundamentally, the Attorney General's
argument fails because it misses the point of a recidivist
sentencing law like the Three Strikes law. It is true that an act
that harms multiple people is more serious than an act that does
not and may be punished accordingly. But the purpose of Three
Strikes sentencing is not (and, for double jeopardy reasons,
cannot be) to impose additional punishment for prior criminal
acts that have already been punished. The purpose is instead

13

to fix the appropriate punishment for the defendant's *current* offense — an offense the law considers " ' "to be an aggravated offense because a repetitive one." ' " (*Ewing v. California* (2003) 538 U.S. 11, 25–26 (plur. opn. of O'Connor, J.), italics added; see *People v. Nguyen* (2009) 46 Cal.4th 1007, 1024 ["Sentence enhancement based on recidivism flows from the premise that the defendant's current criminal conduct is more serious because he or she previously was found to have committed criminal conduct and did not thereafter reform"].)

Here, no one can dispute that Shaw's intoxicated driving in 2002 was more serious because it tragically claimed the lives of two victims, rather than one. It was for this reason that Shaw was charged with and convicted of two separate counts of vehicular manslaughter, and it was for this reason that Shaw faced a longer sentence for that 2002 incident than he would have otherwise. But it does not follow, as the Attorney General supposes, that the voters and legislators who enacted the Three Strikes law intended to authorize imposing an indeterminate life term on Shaw for his current offense — even though his two prior strikes stemmed from just one criminal act — while merely doubling the term of another defendant who had previously engaged in identical conduct.

To bridge this logical gap, the Attorney General points to *Benson*, the case in which we held that the Three Strikes law treats separate convictions as strikes even though they may stem from the same continuous course of conduct. By way of explanation, we said that "the electorate and the Legislature rationally could — and did — conclude that a person who committed additional violence in the course of a prior serious felony (e.g., shooting or pistol-whipping a victim during a robbery, or assaulting a victim during a burglary) should be

treated more harshly than an individual who committed the same initial felony, but whose criminal conduct did not include such additional violence." (*Benson, supra,* 18 Cal.4th at p. 35.) The Attorney General argues that here, too, the enactors of the Three Strikes law could rationally conclude that a person who harmed more people in the course of a prior serious felony poses a greater risk to society and so should be treated more harshly upon reoffense than an individual whose prior criminal act harmed only one person. But the analogy to *Benson* does not hold. As we explained in *Vargas*: "*Benson* involved multiple criminal *acts* (albeit committed in a single course of conduct) and not, as here, multiple criminal *convictions* stemming from the commission of a single act." (*Vargas, supra,* 59 Cal.4th at p. 648.) And where multiple criminal convictions stem from the commission of a single act, to impose a third-strike, indeterminate life term based on that act would contravene the voters' "clear understanding of how the Three Strikes law was intended to work." (*Id.* at p. 646.) It would authorize a third-strike, indeterminate life sentence even when a "defendant has had only two swings of the bat." (*Id.* at p. 647.)[1]

---

[1]    The Attorney General makes a passing suggestion that, at least for purposes of vehicular manslaughter, the number of "acts" at issue may be determined by the number of people killed rather than the conduct undertaken. The Attorney General invokes *Wilkoff v. Superior Court* (1985) 38 Cal.3d 345: "The actus reus of vehicular manslaughter is homicide — the unlawful killing of a human being. [Fn. omitted.] When a defendant commits several homicides in the course of a single driving incident, he or she has committed the act prohibited by the statute several times." (*Id.* at pp. 349–350.) A defendant whose intoxicated driving causes a multivictim traffic accident

By no means do we diminish the seriousness of Shaw's current offense, given the devastating consequences of his driving while intoxicated in 2002. But it is important to recognize what is at issue in this proceeding, which concerns only the proper sentence for his 2020 offense. No one doubts that the Three Strikes law prescribes severe punishment for that offense: It is uncontested that, as a second-strike offender, Shaw is subject to a doubled sentence, which is "itself a serious penalty." (*Vargas*, *supra*, 59 Cal.4th at p. 647.) The question before us is whether the Three Strikes law permits imposing a third-strike, indeterminate life term, even though it is alleged only that Shaw committed a single prior qualifying criminal act. As we explained in *Vargas*, to recognize that the law does not permit third-strike sentencing in these circumstances is not to allow the defendant to escape the consequences of his actions. It is only to ensure that his punishment respects the "tiered penalty structure" the voters and legislators enacted. (*Ibid*.)

In sum, the rule we established in *Vargas*, that a trial court is required to dismiss a strike when two of a defendant's prior strikes are the result of the same act, applies in cases in which the defendant's single act harmed multiple victims. We

---

has not, however, committed more than one "act" in the ordinary sense of that word. *Wilkoff* here does not use the word "act" in its ordinary sense, but as a shorthand for the legal concept of actus reus. The point of the passage is only that, where the actus reus of a crime is defined in terms of causing injury or death to another, harm visited on multiple victims may give rise to multiple counts. As *Wilkoff* acknowledged, this is true even when the harm stems from "*a single criminal act*." (*Id.* at p. 351, italics added.)

disapprove *People v. Rusconi, supra,* 236 Cal.App.4th 273, which reached a contrary conclusion.

## CONCLUSION

We reverse the judgment of the Court of Appeal and remand with directions to remand the matter to the trial court for resentencing consistent with this opinion.

**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**EVANS, J.**
**JENKINS, J.** [*]

---

[*] Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. SHAW

S286453


Concurring Opinion by Justice Groban


To resolve this matter, we need only consider whether defendant Troy Lee Shaw's single act, which killed two victims, may be treated as two prior strike convictions. (See Pen. Code, §§ 667, subds. (b)–(i), 1170.12.) I concur in the majority's conclusion that the answer to that question is "no." However, I write to highlight that this case raises questions about the logic employed in some of our prior cases involving a different set of facts.

Both the high court and our court have correctly explained that the aim of the "Three Strikes" law was to address recidivism. (See, e.g., *Ewing v. California* (2003) 538 U.S. 11, 25; *People v. Sasser* (2015) 61 Cal.4th 1, 12; *People v. Williams* (2004) 34 Cal.4th 397, 405.) In *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*), we observed that "[t]he typical third strike situation . . . involves a criminal offender who commits a qualifying felony after having been afforded *two previous chances to reform* his or her antisocial behavior, hence the law's descriptive baseball-related phrase, ' "Three Strikes and You're Out." ' " (*Id.* at p. 638, italics added.)

In view of the Three Strikes law's intent to deter recidivism and its focus on opportunities for reform, I question our court's prior, closely divided conclusion that two prior offenses committed seconds apart against a single victim may be treated as separate strikes. (*People v. Benson* (1998)

18 Cal.4th 24; see also *id.* at pp. 37–46 (dis. opn. of Chin, J.) [joined by Mosk, J. and Werdegar, J.].) In *Benson,* we determined that if a defendant breaks into a home and immediately thereafter assaults the homeowner, the break-in is a first offense and the assault is a separate, second strike. (See *Benson*, at p. 30.) I similarly do not understand our prior determination that two offenses committed in quick succession against two separate victims should qualify as separate strikes. (See *People v. Fuhrman* (1997) 16 Cal.4th 930.) In *Fuhrman,* we determined that a defendant committed two strikes when he brandished a gun against one victim and then immediately used that gun to force his way into a second victim's truck. (*Fuhrman*, at p. 939.)

The logic of these cases ignores the very purpose of the Three Strikes law, which is to more severely punish repeat offenders who failed to avail themselves of "*two previous chances to reform*." (*Vargas*, *supra*, 59 Cal.4th at p. 638, italics added.) A defendant who breaks into a home and then immediately assaults the homeowner, or who threatens two victims with a gun mere moments apart, has had one chance at reform, not two. These holdings make exposure to a life sentence turn on a matter of seconds: fire a single shotgun blast that injures two victims and receive one strike. But fire two separate shotgun blasts in rapid succession and receive two strikes. Here, Shaw struck a single car with two occupants and the majority opinion rightly concludes that this constitutes one strike. But imagine that Shaw's car hit one vehicle, killing one person, and then careened into another car, killing another person. Would he have committed two acts constituting two strikes? I am uncertain, but the current state of the law means that a difference of literally decades in a defendant's prison sentence

2

could turn on this kind of serendipity.  The divide we now have in our case law makes little sense:  commit two acts in quick succession against a single victim, as in *Benson* (two strikes); commit two acts separated by mere seconds against two victims, as in *Fuhrman* (two strikes); commit a single act against a single victim that results in two convictions, as in *Vargas* (one strike); commit a single act that kills two victims, as described in today's majority opinion (one strike).  The line separating each of these scenarios is blurry at best.

There is a far more logical solution, one that is consistent with the very premise of "three strikes at the bat."  We should interpret the Three Strikes law as it was presented to voters, as punishing defendants who committed a third violent felony after two prior failed attempts at reform.  We were right in *Vargas* when we explained that "the voting public would reasonably have understood the 'Three Strikes' baseball metaphor to mean that a person would have three chances — three swings of the bat, if you will — before the harshest penalty could be imposed. The public also would have understood that no one can be called for two strikes on just one swing." (*Vargas*, *supra*, 59 Cal.4th at p. 646.)  *Fuhrman* and *Benson* violate this principle by calling for two strikes based upon just one swing.  Today's decision does not require us to revisit this departure from the Three Strikes law's basic premise.  Perhaps a future case will.

**GROBAN, J.**

**We Concur:**

**LIU, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Shaw

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 7/12/24 – 3d Dist.
**Rehearing Granted**

_____

**Opinion No.** S286453
**Date Filed:**  December 15, 2025

_____

**Court:**  Superior
**County:**  Placer
**Judge:**  Suzanne Gazzaniga

_____

**Counsel:**

David W. Beaudreau, under appointment by the Supreme Court, and Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell and Kimberley A. Donohue, Assistant Attorneys General, Michael R. Johnsen, Darren K. Indermill, Rachelle A. Newcomb and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

David W. Beaudreau
Law Office of David W. Beaudreau
748 South Meadows Parkway, Suite A9-182
Reno, NV 89521
(619) 309–5989

Kari Ricci Mueller
Deputy Attorney General
1300 I Street
Sacramento, CA 95814
(916) 210-7731